B. L. SHORT, APPELLANT *v.* BULLION-BECK & CHAMPION MINING COMPANY, A CORPORATION, RESPONDENT.

EIGHT-HOUR LAW—APPLIES TO BOTH EMPLOYER AND EMPLOYÉ—OVER-TIME WORK—NO RECOVERY ON QUANTUM MERUIT—CHAP. 72, SESSION LAWS 1896—SEC. 1337 R. S. 1898.*—LIMITATION OF DURATION OF DAY'S WORK—EIGHT HOUR LAW—VALID EXERCISE OF POLICE POWER—EMPLOYÉ CANNOT WAIVE. EMPLOYER AND EMPLOYÉ IN PARI DELICTO—SERVANT MAY NOT CLAIM EXPRESS OR IMPLIED CONTRACT TO PAY FOR SERVICES.

*Eight-hour Law—Applies to both Employer and Employé—Overtime Work—No Recovery on Quantum Meruit—Chap. 72, Session Laws 1896. Sec. 1337 R. S. 1898.**

The provisions of the Session Laws of Utah, 1896, Chap. 72,

---

*See *Holden* v. *Hardy*, 169 U. S. 366.

page 219, and Section 1337 R. S. 1898, apply with equal force to the employer and employé, and a person who works for another, in a mill or reduction works, more than eight hours per day, cannot recover on a *quantum meruit* for his services during the over-time.

BASKIN, J., dissenting.

*Limitation of Duration of Day's Work—Eight Hour Law—Valid Exercise of Police Power—Employé Cannot Waive.*

A limitation of the duration of a day's work, in certain employments, known as the "eight hour law," is a valid exercise of the police power of the State, and creates for the employé a legislative protection which is without his power to waive.

*Employer and Employé in Pari Delicto—Servant May not Claim Express or Implied Contract to Pay for Services.*

A servant may claim neither an express nor an implied contract to pay for services rendered under a contract of employment which is in violation of laws fixing a penalty for doing the act upon which recovery is sought; and in no case can a contract be implied when the parties to it are in *pari delicto* and where plaintiff, to make his case, must resort to the illegal transaction in proof and pleading.

(Decided June 9, 1899.)

Appeal from the Fifth District Court, Juab County, Hon. E. V. Higgins, *Judge.*

Action by plaintiff to recover an amount alleged to be the reasonable value of work and labor performed for defendant and claimed by plaintiff as overtime because he worked twelve hours a day in the mill and reduction works of defendant, when by the laws of the state, eight hours was a day's labor in such places. From a judgment for defendant plaintiff appeals. *Affirmed.*

*Messrs. F. H. Holzheimer, Esq.*, and *Jams A. Williams, Esq.*, for appellant.

*Messrs. Ferguson & Cannon*, for respondent.

MINER, J.

Plaintiff complains in his complaint: ''That between the first day of·June and the first day of November, 1896, plaintiff was employed in a mill owned and operated by the said defendant at Eureka City, State of Utah, for the purpose of treating and reducing ore, by said defendant at the rate of $2.50 per day, and at defendant's request.

3d. That the laws of the State of Utah, found on page 219 of the Laws of Utah for 1896, and section 1337 of the Revised Laws of 1898, an act regulating the hours of employment in underground mines, made eight hours a day's labor in such places, which act is hereby made a part of this complaint.

4th. That between the fifth day of June and the first day of November, 1896, plaintiff worked in said mill and reduction works, at the request of the defendant twelve hours per day. That said services were not performed in cases of emergency when life or property was in imminent danger.

5th. That the overtime worked, of four hours each day, amounted to fifty-nine and one-quarter days.

6th. That said work and labor was reasonably worth the sum of two dollars and fifty cents per day, a total·of $148.15.

7th. That the said $148.15 has not been paid, nor any part thereof.''

The plaintiff also sets out twelve other causes of action of a similar character.

The defendant filed a demurrer to each cause of action, on the ground that the complaint does not state facts sufficient to constitute a cause of action.

The demurrer was sustained. The plaintiff declined to amend his complaint, and elected to stand thereon. There-

upon the court dismissed the complaint, and rendered judgment against the plaintiff for costs. From this judgment plaintiff appeals, alleging that the court erred in sustaining the demurrer and in dismissing his complaint.

Plaintiff claims in his complaint that between the fifth day of June and the first day of November, 1896, he worked in defendant's mill and reduction works, at defendant's request, 12 hours per day; that the overtime worked of four hours per day amounted to 59¼ days that said labor was reasonably worth $2.50 per day, or a total of $148.15, for overtime worked; that said sum of $148.15 has not been paid. No promise is alleged on the part of the defendant to pay for the overtime worked. This court is asked to imply a promise to pay for from the fact that plaintiff was requested to work 12 hours per day, which request plaintiff complied with.

Ch. 72, p. 219, Sess. Laws, 1896, and section 1337 Rev. Stat. 1898, which are plead and made a part of the complaint in force when the work was performed, read as follows:

"Section 1. The period of employment of working men in all underground mines or workings shall be eight (8) hours per day, except in cases of emergency where life or property is in imminent danger.

"Sec. 2. The period of employment of workingmen in smelters and all other institutions for the reduction or refining of ores or metals shall be eight (8) hours per day, except in cases of emergency where life or property is in imminent danger.

"Sec. 3. Any person, body corporate, agent, manager or employer, who shall violate any of the provisions of sections 1 and 2 of this act shall be deemed guilty of a misdemeanor."

Sec. 6 of Art. 16 of the Constitution of the State of Utah, reads as follows:

"Eight hours shall constitute a day's work on all works or undertakings carried on or aided by the State, county or municipal governments; and the legislature shall pass laws to provide for the health and safety of employés in factories, smelters and mines.

The statute above referred to was held constitutional by this court in *State* v. *Holden,* 14 Utah 1, and the supreme court of the United States affirmed such decision in 169 U. S. 366, holding that the act in question was a valid exercise of the police power of the State of Utah.

By the provisions of this statute the period of employment of the plaintiff in defendant's mill and reduction works was eight hours each 24 hours, and any person, body corporate, agent, manager, or employer, who violated the provisions of the act were deemed guilty of a misdemeanor.

The word "employment" as used in the statute, has a plain and definite meaning. Webster defines it as follows: "Employment: the act of employing or using; also the state of being employed."

The plaintiff claims that he was employed by the defendant to work for 12 hours per day, and that he worked for it 12 hours per day or four hours more than the law allowed him to work.

There could be no period of employment for the plaintiff, under his complaint, without an employer. The defendant could not well violate the law unless some one was employed and performed labor prohibited by the statute. When the plaintiff voluntarily performed services at the request of the defendant in the mill and worked 12 hours instead of 8 hours, there was a violation of the statute. Had he worked eight hours each day there would have been no violation of the statute. When the defendant re-

quested the plaintiff to work 12 hours each day and plaintiff complied with that request, the law was violated by the act of each party. The penal provision of the statute applies, and was intended to apply, not to the employer alone, but to any person who, shall violate its provisions. The penal provision was aimed at the employer and at any person who shall violate its provisions. The language of the act does not authorize any inference that it was intended by it to confer any right upon the employé to work more than 8 hours a day and relieve him from any criminal responsibility therefor. Such an inference is clearly repelled by the express provisions of the act making any person liable who violates any of its provisions.

Judge Higgins, before whom the case was tried, aptly discusses the question, as follows: "The question is, however, whether, under this law, such a contract is invalid as to the employé. We think in law and in reason it is. It is void as to him first, for the reason that he is impliedly forbidden to make such a contract; second, because when he enters into a contract of this nature he knowingly and voluntarily assists the employer to violate the law, he becomes in effect a *particeps criminis* with the employer, for it is patent that with no employé willing to make such a contract the employer is powerless to act."

We are further of the opinion that the right to waive this legislative protection is without the power of the employé. This law is in the nature of a state police regulation. Its object is the good of the public as well as of the individual. The state in this matter has intervened in its own behalf. This protection to the State cannot at will be waived by any individual, an integral part thereof. The fact that the individual is willing to waive his protection cannot avail, the public good is entitled to protection and consideration, and if in order to effectuate that object

there must be enforced protection to the individual, such individual must submit to such enforced protection for the public good. As remarked by Mr. Justice Brown, in the case of *Holden* v. *Hardy*, 169 U. S. 390: "But the fact that both parties are of full age and competent to contract does not necessarily deprive the State of the power to interfere. * * * Where the public health demands that one party to the contract shall be protected against himself, the State still retains an interest in his welfare, however reckless he may be."

In the above case the law is sustained upon the broad principle that it is public policy to surround the employé with protection to health. Had the employé the right to waive this protection, both for himself and the state, it can readily be seen that it rests entirely with him to abrogate the operation of the law and to cause it to become a dead letter. He may make the period of employment eight, ten, twelve, or any greater number of hours at his option, with the result that the conditions relating to the period of employment in mines and mills would now exist as before the enactment of this law, a matter purely of contract between the parties, we are of the opinion, and so hold, that both parties are, under the above law, prohibited from enlarging by contract the period of employment."

The complaint, in this case, taken as true, shows that both the plaintiff and defendant, or the person acting in its behalf, were *particeps criminis* in the violation of the statute. They were in *pari delicto*.

By the plaintiff's act in rendering services, prohibited by law, at the defendant's request, both parties became amenable to the penal provision of the statute.

The act in question was enacted as a police regulation, and for the public good, in the interest of public policy.

The experience in the past few years in the business of mining and smelting and underground workings of mines shows that such business can no longer be carried on with due regard to the safety and health of those miners engaged in such business without special protection and restraint against the danger necessarily incident to such employment. For this purpose laws have been enacted in many states, including Utah, designed to meet such exigencies as may arise, and to secure the safety and health of persons who are peculiarly exposed to such dangers, by inhaling unhealthy gases for an unreasonable time while engaged in their employment. The employment of operatives, when too long pursued, in smelters and underground mines is considered by the legislature as detrimental to the health of the employés. If the legislature has power to adopt measures for the protection of the lives of its citizens when engaged in dangerous employment, as has been frequently held, it also has the power to provide precautions for the protection of the health and morals of such employés. The State has a direct interest in the health, safety and prosperity of its people, and it is as much for the interest of the state that public health should be preserved as that life should be secure. It was therefore considered that the employment of men in smelters and underground mines, for a period of more than eight hours per day, was detrimental to the health of such persons, and as the state had an interest in the welfare of its citizens, such employment and labor for more than eight hours should be prohibited under penalty. *Holden* v. *Hardy,* 169 U. S. 366.

Such over employment therefore becomes an evil and detrimental to public interest, and the statute was enacted as a remedy for such evil.

In the case of *Holden* v. *Hardy, supra,* the complaint

charged the defendant with having unlawfully required the employé to work 10 hours each day, and the inference may be drawn therefrom that the employé was under duress when he performed the labor. In the present case it appears that the plaintiff voluntarily embarked in the unlawful employment.

When in *Holden* v. *Hardy, supra,* the supreme court of the United States in referring to the employer said: "Who was apparently the only one liable." It doubtless had reference to the charge made in the complaint. The question of the laborer's liability under the statute was not in issue in that case. The suggestion was doubtless a mere dictum, and not a part of the decision of the case.

In the present case both parties knew the law. They each agreed to take part in an illegal act. In no case can a servant claim under an express or implied contract for services, when the contract, under which it is claimed the services were rendered, is in violation of the laws wherein a penalty is attached for the doing of the act upon which recovery is sought. In no case can such a contract be implied, when the parties to it are in *pari delicto*, and where in order to make out his case, the plaintiff is obliged to resort to the illegal transaction in proof and pleading.

In Wood on Master and Servant, Sec. 200, it is said: "But where the penalty attaches for doing the very act contracted for, the whole contract will be illegal, the rule being that, if a contract is in part connected with an illegal consideration, and grows immediately out of it, it is void in toto. But if the contract is not entire, and is susceptible of division, and a portion rests upon a separate and distinct legal consideration, and forms no part of the consideration for the illegal portion of the contract, the court will uphold that part of it which is legal. But if the consideration is entire, and the two elements are thus

blended, the whole contract is void, and the law will not enforce any part of it; and the real test by which to determine whether or not, a recovery may be had for a part performance of a contract tainted with illegality, or immorality, is whether the party requires any aid from the illegal transaction to make out his case. If he does not, he may recover; but if he does, in any, even a slight degree, it is fatal to a recovery." Pollock, Prin. of Contracts, p. 253-60; *Penn.* v. *Boreman*, 102 Ill. 523; *Alexander* v. *O'Donnel*, 12 Kan. 608; Wood, Mast. & Servant, Sec. 198.

The case of *Miller* v. *Ammon*, 145 U. S. 421, was where an ordinance prohibited, under penalty, the sale of liquors at wholesale, within the city of Chicago, without obtaining a license from the city. It was held that the ordinance was valid, and that liquor sold in violation of the ordinance, could not be recovered for, and that a contract which is made in disobedience of law creates no right of action which courts of justice will enforce; that the general rule was that a contract made in violation of a statute is void, and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. *Jones* v. *Surprise*, 64 N. H. 243; *Martin* v. *Hodge*, 47 Ark. 378; *Taylor* v. *Larrimore*, 19 Mo. App. 445.

Ray on Contractual Limitations, says: "Parties to a contract which is void as against public policy cannot be relieved, one against the other, on the ground that the thing contracted for was lawful and beneficial in itself, and that one has received and retained the benefit under it. Nor will courts assist a person who has participated in a transaction forbidden by statute, to assert rights growing out of, or to relieve himself from the consequences of his own illegal act. *Gleason* v. *Chicago*, M. & St. P.

R. Co., 143 N. W. Rep. 517; *Parsons* v. *Randolph*, 21 Mo. App. 353.

On page 146 Mr. Ray says: '' If the plaintiff requires any aid from the illegal transaction in order to enable him to sue his claim, he cannot enforce it. Where a contract grows immediately out of and is connected with an illegal or immoral act, it will not be enforced. The test to determine whether the action arises *ex stirpe causa*, is the plaintiff's ability to establish his case without any aid from the illegal transaction. If his cause or right to recover depends upon a transaction which is *malum in se* or prohibited by law, and which he must prove in order to make out his case, he cannot recover.''

In this case the plaintiff relies upon and pleads the provision of the statute prohibiting and making unlawful the performance of services in smelters in excess of 8 hours, and he seeks recovery for such services rendered in violation of the statute.

In *Bank* v. *Owens*, 12 How. 79, it is said: ''There can be no civil right where there can be no legal remedy; and there can be no legal remedy for that which is itself illegal. * * * It is true that a statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. In the light of these authorities the solution of the present question is not difficult. By the ordinance, a sale without a license is prohibited under penalty. There is nothing in its language which indicates an intent to limit its scope to the exaction of a penalty or to grant that

a sale may be lawful as between the parties, though unlaw-
ful as against its prohibitions; nor when we consider the
subject matter of the legislation, is there anything to jus-
tify a presumed intent on the part of the law-makers to
relieve the wrongdoer from the ordinary consequences of
a forbidden act." * * * "There is therefore, nothing
in the language of the ordinance or the subject matter of
the regulations which excepts this case from the ordinary
rule, that an act done in disobedience to the law creates
no right of action which a court of justice will enforce."
*Camden* v. *Anderson*, 6 Term Rep. 738; *Briggs* v. *Law-
rence*, 3 Term Rep. 459; Wood on Master & Servant,
Secs. 209–211; *Edgar* v. *Fowler*, 3 East 225.

It appears to us that the consideration for the services
rendered was illegal.

In Sixth Am. & Eng. Enc. of Law, (2d ed.) p. 757, it
is said:

"A contract founded upon a consideration which is
illegal in whole or part is, as between the parties and their
privies, void, and of no effect, and a court of law or of
equity will not entertain any suit brought in relation to it,
but will leave the parties as it finds them. If the agree-
ment be executed, the court will not rescind it. If it is
executory, the court will not aid its execution." *Ohio
Ins. Co.* v. *Merchants Co.*, 53 Am., Dec. 742 and note;
*Milton* v. *Haden*, 70 Am. Dec. 523; *Buck* v. *Albee*, 62
Am. Dec. 564; *Garner* v. *Tanner*, 81 Cal. 370.

In *Prescott* v. *Battersby*, 119 Mass. 285, the plaintiff
was not allowed to recover the agreed price of lumber sold
in violation of an ordinance requiring it to be marked,
and providing a penalty therefor.

A similar holding was made in *Smith* v. *Arnold*, 106
Mass. 270.

In *Wood* v. *Armstrong*, 25 Am. Rep. 671, and note,

the plaintiff was held not entitled to recover on a promissory note, the consideration of which was for bags sold which were not branded or stamped as required by law. The court said: "It would be a strange anomaly if a contract, made in violation of a statute and prohibited by a penalty, could be enforced in a court of the same county whose laws are thus trampled upon and set at defiance." See also *Storz* v. *Finkelstein*, 30 L. R. A. 644.

In *Mexican International Banking Co.* v. *Lichenstein*, 10 Utah, 388, this court held that where the plaintiff, a lottery company, in Old Mexico, sent to defendant at San Francisco, lottery tickets for sale and to be accounted for, and to account for the proceeds, that no recovery could be had for the proceeds of the sale of the tickets; that where both parties were in *pari delicto*, the court would leave them in the same condition it found them; that both parties being engaged in a criminal enterprise, both are principals and both guilty, and that plaintiff was not entitled to recover.

After a consideration of all the authorities, we are of the opinion that the plaintiff was not entitled to recover under the allegation in his complaint, and that the demurrer thereto was properly sustained.

The judgment of the district court is affirmed with costs.

BARTCH, C. J., concurs.

### DISSENTING OPINION.

BASKIN J., dissenting.

In this case it is admitted by the demurrer that the defendant employed the plaintiff and was to pay him for each day's labor $2.50; that at the time the plaintiff was employed and during the time he continued in the service

of the defendant, by the provisions of the act of the legislature of 1896, eight hours labor in the ore reduction works of the defendant, constitute a day's labor; that at the request of defendant the plaintiff, during the time he was in the employ of the defendant, worked in said ore reduction works, each day, four hours more than a day's labor of eight hours, which he had originally contracted to perform for $2.50, and that such extra service was not performed in cases of emergency where life or property was in imminent danger.

Where a party is employed by another to perform some specific act for a stipulated sum, and afterwards, at the request of the employer, something additional is done by the employé, without any express promise of payment, the law will imply a promise by the employer to pay what the additional service is reasonably worth, and the employé may recover on an implied assumpsit by alleging, as has been done in this case, the facts from which the law implies a promise to pay. This is elementary, and therefore reference to the authorities which support the principle is not necessary.

The facts alleged in the complaint and admitted by the demurrer bring the case clearly within this general elementary principle and entitled the plaintiff to recover for the extra labor performed, unless, as asserted in the majority opinion, he is *particeps criminis* with the defendant in violating the provisions of the law of 1896. The terms of this law are so ambiguous and indefinite that resort to construction is required in order to ascertain its meaning and scope. The term employment used in the first and second sections of said act.is defined by Webster as being "The act of employing or using;" also as "The state of being employed." The connections in which this

20 Utah—3.

term is used in both sections are as follows: "The period
of employment of working men (in certain specified occu-
pations) shall be eight hours per day," and it is provided
in section 3 that "Any person, body corporate, agent,
manager or *employer*, who shall violate any of the pro-
visions of Secs. 1 and 2, shall be guilty of a misdemeanor."

If the term employment is used in sections 1 and 2 in
the sense of "the act of employing or using," then the
gist of the offense is the employment or use by the em-
ployer of any of the working men employed in the occu-
pations specified for more than eight hours per day, and
such employer, only, is subject to punishment under said
act, and if said term is used in the sense of "the state of
being employed" then the gist of the crime consists of
working men, engaged in the occupations specified, lab-
oring more than eight hours per day, and they alone are
subject to punishment under said act.

I am of the opinion that the term employment was used
in the sense of the first definition of that term before men-
tioned, and it was not the intention of the legislature to
punish the working man.

The language of the third section indicates that the act
was intended to apply only to the employers of working
men. That section specifically names the employer, and
if it had been intended to apply it to employés as well, the
latter term, from the natural association of ideas, would
have been inserted in said section after the term employer.
The fact that this was not done is significant of the inten-
tion of the framers of the act. It is true that the term "any
person" is used in said section, but it is also true that while
the expression is broad enough to include employés, it is
broad enough to include employer, also, and its use does
not therefore explain why the former class was omitted,
and the latter class was expressly included, if it was the

intention to embrace the former class; nor does its use indicate that it relates to employés, because, as before stated, the act was not intended to apply to working men.

In the case of *Holden* v. *Hardy*, referred to in the majority opinion, and which is reported in 169 U. S. 366, Holden was charged with having, in violation of said act, unlawfully employed "one John Anderson to work and labor as a miner in the underground workings of the Old Jordan mine in Bingham canyon, in the county aforesaid, for the period of ten hours each day; and said defendant, on the date aforesaid and continuously since said time, has unlawfully required said John Anderson, under and by virtue of said employment, to work and labor in the underground workings of the mine aforesaid, for the period of ten hours each day, and that said employment was not in case of an emergency or where life or property was in imminent danger, contrary," etc.

In the opinion in said case the court said, on page 397: "It may not be improper to suggest in this connection that although the prosecution in this case was against the employer of labor, who apparently under the statute is the only one liable, his defense is not so much that his right to contract has been infringed upon, but that the act works a peculiar hardship to his employés, whose right to labor as long as they please is alleged to be thereby violated. The argument would certainly come with better grace and greater cogency from the latter class. But the fact that both parties are of full age and competent to contract does not necessarily deprive the State of the power to interfere where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself."

It is made still more apparent that, under the statute in question, referred to by the Supreme Court, in the lan-

guage just quoted, the employer is the only one liable, when the history of this kind of legislation is considered.

In 1802, Sir Robert Peel introduced in Parliament, and procured the passage of a measure limiting the number of hours per day which an apprentice should be required by his master, to labor, and making it an offense for the master to require the apprentice to work more hours than was fixed as the limit. In about fifteen years afterwards the same broad-minded and patriotic statesman, who was; be it said to his immortal honor, a large manufacturer himself, introduced and procured the passage of a like measure for the protection of young persons employed in manufacturing establishments. These measures were regarded by many persons as an unwarranted interference with free labor, and were bitterly opposed on that ground. The existing facts, however, conclusively showed that even in the absence of any legal restraint labor was not free, but was subjected to the demands which necessity imposed, a force, frequently, so overpowering, as to make the will of employés subservient to the oppressive demands of avaricious masters. As a result of this subservience to such demands thousands of apprentices and young people of both sexes, in England, were being dwarfed in both mind and body, and their health impaired by the excessive hours of labor imposed upon them by their employers. The Apprentice and Factory Acts were passed by Parliament to protect these laborers against such extortions and not to punish them for yielding to the imposition thus imposed upon them.

In 1842, to correct the evil arising from the employment of women and children in coal mines, an Act of Parliament was passed prohibiting altogether the labor of women or children in coal mines and punishing any owner of such mine who should permit such labor to be performed therein.

To protect the laborers from similar impositions, as these Acts of Parliament were passed to prevent, acts have been passed elsewhere than in England. Even in our own free country it has become necessary to invoke the strong arm of the law to protect the laborer against the rapacity of his employer.

I am not aware that it has ever been held, except in the case at bar, that under any of these acts, passed in this country or elsewhere, it was the intention to punish the laborer as well as his employer.

The Supreme Court of the United States, in the case of *Holden* v. *Hardy*, expressed the opinion that the employer was the only one liable under the statute of Utah, and in that connection made the following terse statement of certain recognized facts which, I think, show the reason why employés are exempted from liability, to-wit:

"The legislature has also recognized the fact, which the experience of legislators in many states has corroborated, that the proprietors of these establishments and their operatives do not stand upon an equality, and that their interests are, to a certain extent, conflicting. The former naturally desire to obtain as much labor as possible from their employés, while the latter are often induced by the fear of discharge to conform to regulations which their judgment, fairly exercised, would pronounce to be detrimental to their health or strength. In other words, the proprietors lay down the rules and the laborers are practically constrained to obey them. In such case self-interest is often an unsafe guide, and the legislature may properly interpose its authority." *Holden* v. *Hardy*, *supra*, p. 397.

As the plaintiff is not amenable under the statute, he was not, as asserted in the opinion of the majority of the court, *particeps criminis* in the violation of the statute.

To deny the right of the plaintiff to recover the reasonable value of the extra labor performed at the request of defendant, is to punish him whom the legislature intended to protect by said act and reward the culpable party for an extortion which the act was passed to prevent.

The demurrer was improperly sustained, and the judgment should therefore be reversed.