[No. 25056.   Department Two.   August 6, 1934.]

WILLIAM GOEBEL, *Respondent*, v. C. M. ELLIOTT *et al.,*
*Appellants.*[1]

[1]Reported in 35 P. (2d) 44.

*Edwin C. Ewing,* for appellants.

*Vanderveer & Bassett,* for respondent.

TOLMAN, J.—The respondent brought this action to recover wages alleged to have been earned and wrongfully withheld from him and from twenty-nine of his fellow laborers, whose claims had been assigned to him, while employed by contractors engaged under contract in performing work for the city of Seattle. The case was tried to the court, resulting in findings favorable to the plaintiff and a judgment aggregating $1,334.72, plus attorney's fees and costs, which was made a first lien against the retained percentages under the contract still in the possession of the city. The defendants have appealed.

No question of fact is now presented. The errors assigned raise only the question of the constitutionality of the ordinance of the city fixing the wage scale to be paid by the contractors, and the denial of the defendant's plea of accord and satisfaction.

The ordinance in question, being ordinance No. 60812, became effective before this particular contract was entered into and is entitled:

"AN ORDINANCE relating to contractors and subcontractors performing work for the City of Seattle and to certain classes of employes engaged therein; providing a scale of wages for such work and the hours of labor thereof; providing penalties for violation of this ordinance; and repealing all ordinances or parts thereof in conflict therewith."

Section 1 of the ordinance, among other things, and after fixing a scale of wages for certain skilled laborers, concludes:

"All labor on contracts for paving, sidewalks, watermains and sewers, let by Board of Public Works, $5.60 [per day]."

The contract with the city, entered into by the appellants who constitute the co-partnership, the performance of which was secured by a contractor's bond upon which the corporate appellants were sureties, among other things, provides:

"Section 4. The said party of the second part [the contractor] hereby covenants, stipulates and agrees:

"That he will pay or cause to be paid to the employes on or in connection with this work or under this contract not less than the current rate of wages being paid by The City of Seattle for work of like character, as determined from the files of the Civil Service Commission, and set forth in the annual salary ordinance of the City of Seattle in effect at the time of the signing of this contract, the attached schedule being part thereof;

"That he will pay or cause to be paid to persons employed in any of the generally recognized mechanical trades, and not included in the attached schedule or annual salary ordinance, the current prevailing rates of compensation for similar work in private employment, the Board of Public Works to determine such current prevailing rates, and that he will comply with all the requirements of Ordinance No. 60812, a copy of which is attached hereto and made a part hereof.

"That he will not enter directly or indirectly into any agreement with any person or persons for labor or employment at any less wage; . . .

"That the above covenants are made for the benefit of the individual employes of the contractor, and any employe performing work or labor under this contract shall have a cause of action against the contractor for the difference between the wages herein specified and the amount actually paid to such employe;"

Thus it clearly appears that ordinance No. 60812 was specifically made a part of the contract, and that the ordinance by its terms required the payment of a wage scale of $5.60 per day to respondent and his assignors, notwithstanding which, and in the face of the provision in the contract that the covenant to pay the fixed scale was for the benefit of the laborers, a lesser wage was paid.

It might be argued, perhaps, that, since the contractors bid for the work with full knowledge and accepted the contract containing these plain provisions, they are now estopped from disputing the obligation to pay the wage scale as fixed by the ordinance upon any ground, but passing that question, we will dispose of other points raised.

It seems to be first argued that the trial court erred in refusing to consider evidence received, and offered, but not received, tending to show the motive which actuated the city council in enacting the ordinance, and that we should consider that evidence and thus enter upon an inquiry into the legislative motive. Assuming that the wage scale was proposed by a labor union as the scale which it had adopted, and that the interest of the union was made known to the members of the city council, still we think the question is governed by the general rule heretofore adopted by this court in the case of *Cornelius v. Seattle,* 123 Wash. 550, 213 Pac. 17, where it was said:

"The next question is that involved in the court's refusal to permit evidence to prove the allegations of the complaint relative to the motives that actuated members of the city council in voting for the bill. Conceding all that is set out in the complaint to be true upon this phase of the case, there is nothing therein which can be considered by the courts. Under no consideration or circumstance will the motives of legislators, considered as the moral inducement for their

votes on a particular enactment, be inquired into by a judicial tribunal, and no principle of law is more firmly established.''

■ It is next argued that the ordinance is discriminatory in character and class legislation, and that it applies only to contractors and subcontractors, and not to the city itself. Each argument presented seems to have been fully and fairly met and answered in our previous decisions. *Gies v. Broad,* 41 Wash. 448, 83 Pac. 1025; *Malette v. Spokane,* 77 Wash. 205, 137 Pac. 496, Ann. Cas. 1915D, 225, 51 L. R. A. (N. S.) 686.

The ordinance is general in character, and applies equally to all contractors and subcontractors who may perform work for the city. No authority is cited which limited the right of the city to classify the different kinds of labor, or to classify common labor according to the kind and character of the work involved, and to provide a different wage scale for each classification.

Many ordinances of the city are referred to, and it appears that, under them, common labor is paid at different rates according to the particular character of the labor in each instance, but in no other ordinance has the city fixed a wage scale differing from that fixed in ordinance No. 60812 for the particular kind and character of work therein described. Presumably, the governing body of a city had reason to believe that some kinds of common labor are more exacting or more hazardous than are others, and that may very well be true. We have no power to inquire into the wisdom of the legislative policy, and on the authority of our previous decisions must hold the ordinance to be valid.

■ As an affirmative defense, appellants pleaded accord and satisfaction. It appears that the workmen were paid by semi-monthly pay checks, each of which recites that the employee by endorsing acknowledges payment in full of all wages to date. Ordinance No.

60812 declares a public policy, and provides a penalty for its violation. *Gies v. Broad, supra,* and *Malette v. Spokane, supra.*

By the contract, appellants became expressly bound not to "enter directly or indirectly into any agreement with any person or persons for labor or employment at any less wage," and consented to the further condition that an employee should have a cause of action for the difference between the amount actually paid and the amount earned under the wage scale. This contract is one in which the public has an interest because the public policy of the municipality is involved, therefore this feature of the case falls within the rule announced in *Larson v. Rice,* 100 Wash. 642, 171 Pac. 1037, where it is said:

"It is undoubtedly a general rule that private controversies between individuals *sui juris* may be compromised by them by mutual agreement, and that the courts will not, where no question of fraud intervenes, relieve from the agreement, even though it be shown that the one gained rights thereby to which he would not otherwise have been entitled and that the other gave up rights to which he was fully entitled; this, on the principle that compromises are favored by the law, since they tend to prevent strife and conduce to peace and to the general welfare of the community. But the controversy here had an added element not found in the ordinary controversy between individuals. It was not wholly of private concern. It was affected with a public interest. The state, having declared that a minimum wage of a certain amount is necessary to a decent maintenance of an employee engaged in the employment in which the respondent was engaged, has an interest in seeing that the fixed compensation is actually paid. The statute making the declaration not only makes contracts of employment for less than the minimum wage void, but has sought to secure its enforcement by making it a penal offense on the part of the employer to pay less than the minimum wage, and by

giving to the employee a right of action to recover the difference between the wage actually paid and such minimum wage. The statute was not, therefore, intended solely for the benefit of the individual wage earner. It was believed that the welfare of the public requires that wage earners receive a wage sufficient for their decent maintenance. The statute being thus protective of the public as well as of the wage earner, it must follow that any contract of settlement of a controversy arising out of a failure to pay the fixed minimum wage in which the state did not participate is voidable, if not void.''

■ For the first time, during the oral argument the point was raised that ordinance No. 60812 does not apply to the work here in question because the term ''water main'' does not include ''reservoir.'' No such question was raised by the errors assigned nor argued in the printed briefs. Under the rules of this court and our previous decisions, the question cannot now be considered. *Marshall v. Dunn,* 93 Wash. 156, 160 Pac. 298; *Price v. Hornburg,* 101 Wash. 472, 172 Pac. 575; *Mohney v. Davis,* 104 Wash. 209, 176 Pac. 31; *Blouen v. Quimpere Canning Co.,* 139 Wash. 436, 247 Pac. 940.

■ In any event, having specifically made ordinance No. 60812 a part of the contract, neither party is now in a position to urge that it was not applicable to the work described in the contract.

The judgment is affirmed.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.