**WILKINSON et al. v. NOLAND CO., Inc.**

No. 142.

District Court, E. D. Virginia, Norfolk Division.

Sept. 30, 1941.

WYCHE, District Judge. ·

In this case the plaintiffs seek to recover from the defendant the sum of one thousand, nine hundred, eight and 26/100 ($1,-908.26) dollars, plus a like amount as liquidated damages, together with costs, and a reasonable attorney's fee, under the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 201—219. It was tried before me without a jury.

The facts are substantially as follows:

The defendant is a large company engaged in the wholesale jobbing and buying of plumbing, heating and other building supplies from manufacturers in and out of the State of Virginia, and transporting and shipping such materials in interstate commerce to and from its principal office in the City of Newport News, Virginia, and its other eighteen branches in several states and the District of Columbia, employing some five hundred employees. Its yearly purchases and sales run into many millions of dollars. A vast portion of the business is done through its home office at Newport News and is divided essentially into four departments, the Executive, the Department of Finance, the Department of Purchases and Costs and the General Sales Department. The Department of Purchases and Costs is one of the principal administrative units of the company.

The plaintiff W. H. Wilkinson, Sr., had been in the employ of the defendant for the most part of seventeen or eighteen years, occupying various positions of responsibility in Roanoke, Virginia, Spartanburg, South Carolina, West Palm Beach, Florida, and Washington, D. C., and for some eight or ten years prior to the time that he left the services of the company he occupied the position of Assistant Purchasing Agent and Acting Purchasing Agent for the company and all of its branches. His salary increased depending upon the positions he occupied, until the year 1938, he received a total compensation from the company of $4,370 and for the year 1939 his total compensation was $5,-405. He had a wide latitude of powers and discretion commensurate with the position of Assistant or Acting Purchasing Agent in a company the size of the defendant. He had the power to hire and fire employees in his department, and to advance or demote the same or recommend such, and whose recommendation was given particular weight, and exercised such powers. He had a private office, and, in an adjoining office under his direct supervision were about twenty employees. He had two stenographers, one of whom was considered his secretary and to whom he gave most of his dictation. He exercised broad discretion in correspondence in the name of the company, in matters pertaining to his department, consulted with salesmen at-

tempting to sell large orders to his company, and committed his company to many hundreds of thousands of dollars a year over his own signature. He made or supervised the making of the price catalogue of the company, which was characterized by the president as the yardstick on which was set the selling price on goods that the company purchased. He issued bulletins to all the branch managers, over his own signature, and was authorized to see that his orders were carried out. He was frequently consulted by the president and general manager on the state of the market to buy pipe, fixtures, copper, lead, iron and other commodities, and frequently was instructed to, and did buy for the company large amounts on his own judgment. He initiated large increases and reductions of inventory. He frequently, without instruction, made trips to various branch offices for the purpose of supervising sales and auditing accounts. He had no limit on his expense account, either for his own expense or entertainment purposes, and the same was uniformly paid.

Prior to October, 1938, William J. Burke had been Purchasing Agent for the defendant, and W. H. Wilkinson, Sr., had been Assistant Purchasing Agent for a number of years. In 1938 Mr. Burke was transferred to the position of manager of the Newport News branch and a bulletin was issued appointing W. H. Wilkinson, Sr., as Acting Purchasing Agent, in which capacity he acted in complete charge of the Department of Purchases and Costs and performed the duties above hereinbefore enumerated. On October 2, 1939, Mr. Learner was appointed Purchasing Agent, Wilkinson, Sr., continuing in his position as Assistant Purchasing Agent with his powers and duties unchanged, except that Mr. Learner was actually head of the department, Mr. Wilkinson's own statement being "I was doing the same class of work from October, 1938, until the time I was discharged."

The record consists of correspondence, bulletins, purchase orders, company directories, and on September 23, 1938, when the defendant moved into its new building in Newport News, it issued a full page advertisement, which was admitted as an exhibit, showing "Noland Company's Officers and Department Heads", and there exhibited is Mr. Wilkinson's picture, and under it these words: "Assistant Purchasing Agent", and following that a brief biography as follows: "Walter Hopkins Wilkinson, Assistant Purchasing Agent, General Office. Starting as price clerk, Roanoke, 16 years ago. Promotions: Salesman, Roanoke; Office Manager, Spartanburg; Assistant Manager, West Palm Beach; Assistant Purchasing Agent since 1934."

During the time that this plaintiff was employed during the effective period of the Act he did not make any claim for overtime, although he, as the head or acting head of his department, had specific and repeated instructions from the president or general manager concerning reporting overtime for those entitled to the same, on forms prepared for that purpose and delivered to him. These forms were posted on the bulletin board used for bulletins and other information in which all officers, administrative heads and employees were interested. It was not until about three months after his resignation, July 5, 1940, that Mr. Wilkinson and his son made any claim for overtime and the occasion for that was because, as he stated, Mr. L. U. Noland, president of the defendant company, called upon Wilkinson, Sr., to pay or otherwise take care of Wilkinson's past due note, on which Mr. Noland and Mr. Ferguson, another officer of the company, were accommodation endorsers. The balance due on the note was $1,000, which, with interest and collection fees, amounted to approximately the amount claimed for overtime for Wilkinson and his son, which he stated in the letter to be $1,297.12.

It was not the intention of Congress in passing the Fair Labor Standards Act to include an employee, pictured by the foregoing facts, to benefit from its terms and provisions. Congress expressly by section 13(a) (1), 29 U.S.C.A. § 213, exempted employees employed in a bona fide executive and administrative capacity (as such terms are defined and delimited by Regulations of the Administrator).

An executive is a reasonably well understood term, and duties in such capacity relate to active participation in control, supervision and management of a business. Doing routine menial labor is not acting in an executive capacity. An administrator is one who administers, a manager. One who administers affairs; one who directs, manages, executes or dispenses. Arkansas Amusement Corporation v. Kempner, 8 Cir., 57 F.2d 466. See, also, 15 Words and Phrases, Perm. Ed., 580, et

seq.; and 2 Words and Phrases, Perm. Ed., 436, et seq.; Saint v. Allen, 169 La. 1046, 126 So. 548; Nissen v. Winston-Salem, 206 N.C. 888, 175 S.E. 310; Heafy v. McCabe, 270 N.Y. 616, 1 N.E.2d 357.

In November, 1938, the Administrator, under the authority of the Act, Section 13 (a) (1) "defined and delimited" by Regulation, Part 541.1 as follows: "Section 541.1—Executive and Administrative. The term 'employee employed in a bona fide executive (and) administrative * * * capacity' in section 13(a) (1) of the Act shall mean any employee whose primary duty is the management of the establishment, or a customarily recognized department thereof, in which he is employed, and who customarily and regularly directs the work of other employees therein, and who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and who customarily and regularly exercises discretionary powers, and who does no substantial amount of work of the same nature as that performed by nonexempt employees of the employer, and who is compensated for his services at not less than $30 (exclusive of board, lodging, or other facilities) for a work week."

Wilkinson, Sr., was an important employee of the defendant. He was paid a substantial salary. He had been with the company a number of years, had learned its business in many of the branches and was brought to the home office, where he was put in one of its most important departments, that of Purchases and Costs. He served under Mr. Burke as Assistant Purchasing Agent for several years, and prior to October, 1938, after Mr. Burke was transferred to the Newport News office, this plaintiff was Acting Purchasing Agent, although his title was Assistant Purchasing Agent. He was in complete charge of the department, hired and fired clerks, employed extra help, fixed their salaries, ordered the payment of back time, directed the work of the employees in his department, committed the company to hundreds of thousands of dollars of purchases by contract, exercised discretionary powers as the head of his department, and performed other very important duties, until the time his services were terminated. While at times in the rush, he performed work of the same routine as that performed by nonexempt employees, such work was not continuous.

In my opinion it is clear from the facts in this case, from the provisions of the Act itself, and from the definition of the Administrator that W. H. Wilkinson, Sr., was employed in a bona fide executive and administrative capacity by the defendant, and, therefore, the provisions of sections 6 and 7 of the Act relating to minimum wages and maximum hours are inapplicable as to him.

W. H. Wilkinson, Jr., the other plaintiff, was a clerk employed by the defendant company. His employment commenced before the effective date of the Act and at that time the defendant posted bulletins explaining to the employees the requirements of the Act, their rights and obligations. The company had forms prepared, which were delivered to department heads, and these forms were likewise posted on the bulletin board and in the Department of Purchase and Cost, where this plaintiff worked. He was notified to report to his superior officer any overtime served by him, as were the other employees. Employees of the defendant were not checked in and out in the performance of their duties. During the entire time of his service, this plaintiff failed to report any overtime served by him. He testified he was afraid he would lose his job if he reported overtime. He accepted an extra week's pay each year, as well as additional compensation, and when his services were terminated, for cause, there was no claim for overtime. It was not until several months afterwards, when his father was called upon to pay an obligation, that he filed any claim for overtime.

■ Most of the employees of the defendant worked overtime. A very few reported overtime in response to the bulletins posted by the defendant requesting them so to do. The employees evidently thought it would not be to their best interest to report the overtime in response to the request in the posted bulletins. The defendant evidently endeavored to compensate its employees for overtime by granting them a bonus from time to time. This was not the intention of the law. The Act requires the defendant to keep a record of the overtime. 29 U.S.C.A. § 211(c).

■ In Section 2 of the Act Congress sets forth its findings and declaration of policy. The objectives aimed at were the

elimination of labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of employees and the eradication of the burdens of commerce caused by such substandard labor conditions. Robertson v. Argus Hosiery Mills, Inc., 6 Cir., 121 F.2d 285.

Defendant's obligation to pay wages and overtime to its employees is not exclusively the private concern of the parties, but is regulated by a statute passed in the public interest. The Fair Labor Standards Act expressed the judgment of Congress that the nation has a direct interest in the employment of workers at minimum levels. The objectives of the Act and the methods employed to attain them may not be set at naught by agreements between the parties, or by the acquiescence of the employees.

■ Therefore, no agreement by the employees entered into before or during their period of employment, to work for less than the minimum wage, or not to accept overtime compensation, or to accept overtime compensation at rates lower than those prescribed by the Act, and no acquiescence by employees by failing to report overtime, as was done in this case, would be effective. To approve a waiver by employees of the minimum wages and overtime compensation due them would be to thwart the purposes of the Act.

■ The minimum wage law was passed not only for the establishment of individual private rights, but to declare solemnly on the part of the State, that as a matter of public policy, it is interested in seeing that its citizens are protected in such rights, and, therefore, "where a right has been given to an individual not alone for his private benefit, but as a matter of public policy, in the interest of the state, it may not be waived by any one." City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 1180, 102 A.L.R. 837. To the same effect see Goebel v. Elliott, 178 Wash. 444, 35 P.2d 44; cf. Short v. Bullion-Beck & Champion Min. Co., 20 Utah 20, 57 P. 720, 45 L.R.A. 603; Cato v. Grendel Cotton Mills, 132 S.C. 454, 129 S.E. 203, 41 A.L.R. 439; Montgomery Ward & Co. v. Lusk, Tex.Civ.App., 52 S.W.2d 1110.

■ While I am convinced that the plaintiff performed some overtime for which he was not paid, he has failed to convince me by the greater weight or preponderance of the testimony that he kept the record of his overtime as contended by him. All the testimony tends to show that he never had any intention of charging for overtime. If he had such a record I am satisfied he would have produced it and demanded overtime when he was discharged. It was not until the defendant made claim against his father for the payment of a note that any mention of overtime was made. While the law requires the defendant to keep a record of overtime, the failure of the defendant to keep such record is not evidence upon which I can compute overtime for this plaintiff. The burden is still upon the plaintiff, regardless of the defendant's failure to keep a record, to prove that he worked overtime and how much overtime he worked.

■ It is not enough for a plaintiff to come into Court under this Act and assert that he is entitled to time and a half for overtime served. As in any other case, he must produce evidence that is convincing and prove his cause by the greater weight of the evidence. The statement filed by this plaintiff and relied on by him, has no probative value in itself. It is not an original entry nor an account that may have had some evidential value, but it is concededly a copy of so-called original entries made on private slips of paper, which were destroyed after he had decided to bring this action. Because of his failure to produce evidence that is convincing and substantial, and because of his failure to preponderate in his proof, this plaintiff cannot recover.

"Evidence must amount to something of relevant consequence and of a substantial nature from which the fact in issue can be reasonably inferred. It does not consist of vague, uncertain, irrelevant matter, not carrying the quality of proof to induce conviction." McDonald v. Robertson, 6 Cir., 104 F.2d 945, 948.

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126. See, also, National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678; Shapleigh v. United Farms Co., 5 Cir., 100 F.2d 287; Montgomery Ward & Co. v. National Labor Relations Board, 7 Cir., 107 F.2d

555; United States v. Krumsiek, 1 Cir., 111 F.2d 74.

An order will be entered in accordance with the conclusions reached herein.