MRS. SAM T. HODGES, WIDOW OF SAM T. HODGES, DECEASED, DEPENDENT AND PLAINTIFF, v. HOME MORTGAGE COMPANY, EMPLOYER, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, CARRIER, DEFENDANTS.

(Filed 25 November, 1931.)

1. **Master and Servant F a—Executive, while engaged in duties relative to policy of company, is not an employee within meaning of the act.**

   The scope of the term "employee" as used in the Workmen's Compensation Act is to be determined in the light of the entire act, giving significance to its provision for compensation based upon a per centum of the

average weekly wage and its title and theory to award compensation to workmen and their dependents, and *Held:* executives, while engaged in their duties directing or relating to the policy of the business are not employees within the intent and meaning of the act, the test being the nature and quality of the act at the time of the injury.

**2. Same—Evidence in this case disclosed that executive was injured while discharging duties relating to policy of the business.**

Upon evidence tending to show that an injury made the basis for a claim under the Workmen's Compensation Act was received by the vice-president of a mortgage company whose remuneration was fixed upon a commission on the loans he secured for the company, and that the accident occurred while he was on his way to catch a train to meet the treasurer of the company to negotiate certain trust contracts: *Held,* the injury was not compensable under the Workmen's Compensation Act, the vice-president not being an employee at the time within the intent and meaning of its provisions.

CIVIL ACTION, before *Daniels, J.,* at Special Term, 1931, of DURHAM.

Sam T. Hodges, executive vice-president of the Home Mortgage Company, died on 13 June, 1930, as a result of an automobile accident. A claim for compensation was filed and a hearing was held in Durham on 16 March, 1931. An award was made by the hearing commissioner, and thereupon the defendants, Home Mortgage Company and United States Fidelity and Guaranty Company, carrier, appealed to the full Commission as provided by statute. The full Commission affirmed the award and the defendants appealed to the Superior Court of Durham County.

Hodges, the deceased, at the time of his death, was executive vice-president and directing head of the Home Mortgage Company. He had no immediate superior. No one issued orders to him. He was responsible to the board of directors. All of the employees were subject to his orders." There was a contract made between Mr. Hodges and the Home Mortgage Company, dated 5 April, 1927, which provided that Mr. Hodges was "to enter upon the production of mortgages for the said company, . . . to devote his entire time to the production of mortgage loans for the said Home Mortgage Company through agencies to be established and directed by him. The said Sam T. Hodges hereby agrees that through his local agents he will produce loans for the said Home Mortgage Company, the borrower to furnish and pay for a photograph of the premises, survey of the property, examination of title," etc.

In return for his services the contract further provided: "The said Home Mortgage Company hereby agrees to pay to the said Sam T. Hodges a commission of one per cent on all loans accepted by the Home Mortgage Company." Said contract further specified: "It is hereby

agreed that this contract is to remain in force so long as the said Sam T. Hodges produces minimum business after the first year, of at least three million dollars a year on good first mortgage applications. It is the sense of this contract that Sam T. Hodges, as vice-president of the Home Mortgage Company is to be in charge of the production of business subject, in his relations with the company to the executive committee and board of directors as any employee would be and in the event that said Sam T. Hodges should become undesirable as vice-president of the said company this contract may be canceled by the board of directors upon a basis reasonable to both parties. . . . Should the volume of desirable and acceptable monthly repayment applications for loans procured through the efforts of said Sam T. Hodges and the agents set up by him after two months from this day fall below three million dollars a year the directors are to have the right to cancel this contract upon reasonable notice to the said Sam T. Hodges, and should the mortgage company be unable to handle the volume of business offered by the said Sam T. Hodges to the company, the said Sam T. Hodges is to have the right to cancel the contract with the company upon reasonable notice."

The evidence disclosed that the commissions earned by deceased from June, 1929, to June, 1930, amounted to $31,957.00. Mr. Hodges was not on the payroll of the company, and hence his commissions or earnings were not included in ascertaining the premium to be paid to the carrier in the compensation policy of insurance. On 12 June, 1930, the deceased had come to Hendersonville for the purpose of "lining up the sale of protected investment bonds all over the State. . . . He expected to spend a week over there organizing and getting sales force completed. We had distressed mortgages in Western North Carolina. . . . He was to assume the bond end of directing the company's affairs, and after we had corrected the frozen situation we were in at that time, then the matter of compensation would be taken up, but until that time he was to actively direct the company's affairs without compensation."

On 9 June, the treasurer of the company went to New York on business for the company. He testified: "While up there I ran into some complications in connection with out trusts and found it necessary to come back to Durham to assemble some figures, and because Mr. Hodges was intimately acquainted with the work I was on in New York, I thought it necessary that he go back with me to get the matter adjusted. So after I got my data assembled, I called him over long distance to get him to go back with me that night to complete the work in connection with the trust with the Metropolitan Casualty Insurance Company. Mr.

Hodges agreed to meet me in Greensboro." On the way to Greensboro to catch the train for New York Mr. Hodges was killed in an automobile accident.

The Industrial Commission found as a fact that the death of claimant was caused by accident at a time when he was on official business for the Home Mortgage Company, and that his average weekly earnings exceeded $30.00. The Commission further found that he "was an employee of the Home Mortgage Company, working on a commission basis in lieu of a salary."

Upon the foregoing facts the Industrial Commission made an award, from which award the Home Mortgage Company and the United States Fidelity and Guaranty Company, carrier, appealed to the Superior Court. The trial judge was of the opinion that at the time of his death the claimant was not an employee of the Home Mortgage Company within the contemplation of the Workmen's Compensation Act and set aside the award made by the Industrial Commission, and the plaintiff appealed to the Supreme Court.

*W. S. Lockhart for plaintiff.*
*Biggs & Broughton for defendant.*

BROGDEN, J. Is an executive vice-president and managing head of a corporation an employee thereof within the contemplation of the Workmen's Compensation Act?

Section 2(b) of the compensation act provides: "The term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, but excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer," etc. This definition must be interpreted in the light of the entire act. In the first instance, the title and theory of the act import the idea of compensation for workmen and their dependents. The awards provided in the statute are based upon a per centum of average weekly wages." These terms and terms of similar significance, interpreted according to their ordinary meaning, point out and designate working men as the beneficiaries of the act, and would not ordinarily be deemed to refer to executive officers receiving large salaries and engaged exclusively in designing and executing the general policies of the business.

The courts of various states have debated the question and arrived at different conclusions. The divergence of conclusion upon the subject

has resulted from different theories of interpretation as well as from differences in the wording of particular statutes providing compensation. For instance, the Oklahoma Court in *Southern Surety Company v. Childers,* 209 Pac., 927, said: "Obviously, where the claimant was the chief executive officer of a large corporation and his duties did not require that he perform manual or mechanical labor, he could not be regarded as the employee within the meaning of the act or the terms of the policy, and if he sustained injuries while performing manual or mechanical labor, which was no part of his duties, but in which he acted as a mere volunteer, he would not be entitled to compensation. On the other hand, although the claimant was the owner of the majority of the stock and was the chief executive officer of a corporation, yet if he performed manual or mechanical labor as a part of his duties, such an official in his capacity as a workman might measure up in all respects to the conception of an employee within the meaning of the act." The Pennsylvania Court in *Eagleson v. Harry G. Preston Co.,* 109 Atlantic, 154, allowed compensation to a salesman, but remarked: "This is not the case of a higher executive officer of a corporation claiming an award under the compensation act; that point will be met and decided when we come to it, and not before."

The Court of Appeals of New York, in *Skouitchi v. Chic Cloak & Suit Co.,* 130 N. E., 299, allowed compensation to the president-treasurer and manager of a small corporation. The Court, however, stated "that the claimant performed ordinary detail and manual work, such as would be required of a typical employee." Distinguishing *Browne v. Browne Co.,* 116 N. E., 364, the Court further said that the *Browne* case simply held that "higher executive officers of a corporation are not, as such, its employees in the ordinary use of the word."

Likewise, the Supreme Judicial Court of Maine, in *Higgins v. Bates Street Shirt Co.,* 149 Atlantic, 147, said: "When the president of a corporation acts only as such, performing the regular executive duties pertaining to his office, he is not an employee within the meaning of the statutory definition." The Wisconsin Court in *Milwaukee Toy Co. v. Industrial Commission,* 234 N. W., 748, allowed compensation to the president, manager and general manager of the corporation. The decision was based upon the language of the compensation act in force in that state, which provided that an injured person, in order to recover, must be performing "services of another under any contract of hire, express or implied." The opinion proceeds upon the theory that the corporation was a separate entity from its officers, and, therefore, whether a person was an officer or not, he was in the "service of another." Recovery was also permitted in the case of *Columbia Casualty*

23—201

*Co. v. Industrial Commission,* 227 N. W., 292. In that case the injured person was secretary and treasurer of the corporation, but at the time of the injury the claimant was running a can-capping machine. Other cases discussing the question are: *In re Raynes,* 118 N. E., 387; *Millers' Mutual Casualty Co. v. Hoover,* 235 S. E., 863; *Zurich Accident & Liability Ins. Co. v. Industrial Commission,* 213 N. W., 630; *Cleveland Commercial Auto Body Co. v. Frank,* 155 N. E., 567; *Emery's case,* 170 N. E., 839; *Erickson v. Furniture Co.,* 229 N. W., 101; *Donaldson v. Donaldson Co.,* 223 N. W., 227. See 44 A. L. R., 1213.

The majority of the decided cases adhere to what may be called the dual capacity doctrine; that is to say, that executive officers of a corporation will not be denied compensation merely because they are executive officers if, as a matter of fact, at the time of the injury they are engaged in performing manual labor or the ordinary duties of a workman. Hence, one of the fundamental tests of the right to compensation is not the title of the injured person, but the nature and quality of the act he is performing at the time of the injury. This theory is undoubtedly sound. Certainly, it is supported by the weight of authority.

Hence, the remaining inquiry is whether at the time of his death Sam T. Hodges was engaged in the performance of such duties as bring him within the purview of the compensation act.

A few days prior to his death he had gone to Hendersonville, North Carolina, for the avowed purpose of lining up "salesmen who would produce mortgage loans for the company," and also to institute plans for efficient handling of distressed property. While engaged in the performance of these duties he is requested to go to New York "to complete the work in connection with the trust with the Metropolitan Casualty Insurance Company." On his way to New York for such purpose, he met his death by accident. Manifestly, the duty of negotiating trust contracts or assisting in solving the complications and complexities of a trust business would not lie within the field of the duties of an ordinary employee or workman. Such duty requires a highly specialized knowledge and efficiency, and pertains exclusively to the function of setting up and supervising the policies of the employer rather than executing the routine work of the business. Therefore, upon a consideration of the entire record, the Court is of the opinion that the trial judge properly interpreted the law, and the judgment is upheld.

Affirmed.