MRS. EVA CARTER NISSEN, WIDOW OF HARRY E. NISSEN, DECEASED, EMPLOYEE, v. CITY OF WINSTON-SALEM, EMPLOYER, SELF-INSURER.

(Filed 11 July, 1934.)

1. **Master and Servant F a—Nature of duties at time of injury determines whether injured person is employee or executive officer.**

Whether an injured person is an executive officer or an employee within the meaning of the Compensation Act, N. C. Code, 8081(i), is to be determined by the nature of the act performed by him at the time of the injury, but mere desultory, disconnected, and infrequent acts of manual labor not reasonably required by the exigencies of the situation will not classify an executive officer as an employee in the performance of such acts.

2. **Same—Dependents of fire chief, killed in collision on way to fire, held entitled to compensation under facts of this case.**

In this hearing before the Industrial Commission there was evidence that the fire chief of defendant city was killed in a collision while on his way to a fire, that the fire chief in the course of his duties habitually did the work of a regular fireman in fighting fires, and that, although he was elected for a term of one year by the board of aldermen, he was not required to take oath of office or give bond, had no authority to employ or discharge firemen, and that at all times he was under the control, supervision and direction of the board of aldermen. *Held*, the evidence was sufficient to support a finding that the fire chief, at the time of his injury, was an employee of the city within the meaning of the

Compensation Act, it appearing that he did not act purely in an administrative capacity even if it be granted that he was an elected officer, N. C. Code, 8081(i).

**3. Master and Servant F i—**

The finding of the Industrial Commission that a fire chief of a city, at the time of his injury, was an employee of the city, and not an elected officer acting in a purely administrative capacity, is conclusive on appeal when supported by competent evidence.

CIVIL ACTION, before *Alley, J.*, at March Term, 1934, of FORSYTH.

On 9 September, 1932, the board of aldermen of the city of Winston-Salem elected Harry E. Nissen chief of the fire department of said city, to serve for one year, and fixed his salary at $2,892 per annum. The ordinance of Winston-Salem then in force provided in substance that the board of aldermen in September of each year should elect a chief of the fire department, who "shall hold office for one year or until his successor is elected and qualified and shall receive such salary as may be fixed by the board of aldermen." It was further provided that "the chief of the fire department shall be the commanding officer of the department under the supervision of the mayor and fire and building committee, and shall be responsible to the board of aldermen for its proper management. The property of the department shall be in his care and for its safety and proper assignment he shall be directly responsible to the board of aldermen. It shall be the duty of the chief to see that all rules, regulations and orders prescribed by the board of aldermen are promptly and faithfully respected and obeyed, and whenever any violation of the same is reported to him or comes under his personal observation, he shall promptly investigate the same and report the matter to the board." The chief had authority to suspend any member of the department from duty, "but shall immediately report such suspension, together with all the facts in the case to the board of aldermen for its consideration and action." It was the duty of the chief to respond to all fire alarms and "upon arrival at the scene of the fire at once assume command, taking every precaution for the protection of life and property. . . . He shall not absent himself from the city without the consent of the mayor or the fire and building committee." Certain other duties were imposed upon the chief of the fire department, such as making reports of all fires, furnishing certain information with respect thereto, and to inspect all buildings and premises in the city, to see that they are kept free from empty boxes, waste paper, ashes, and rubbish "which may be liable to cause or spread fire, and for the purpose of remedying any condition that may in his opinion be liable to cause or spread fire, and to enforce all the ordinances of the city relating to the prevention of fires."

On 28 November, 1932, there was a fire alarm in Winston-Salem and the deceased, together with various units of the fire department, responded to the call. While the first fire was in progress another alarm was turned in from another part of the city. Thereupon the chief in company with another fireman started to the second fire, and on the way at the corner of Sixth and Cherry streets there was a collision between the automobile driven by the deceased and a bus, and as a result of such collision the deceased was killed.

A claim was filed with the Industrial Commission and a hearing held on 16 June, 1933. Certain testimony was taken at the hearing, and this testimony tended to show that Nissen had been chief of. the fire department for more than fourteen years. He stayed at home part of the time and at the station part of the time, but was on duty practically all the time. Jenkins, who had been a member of the fire department for fourteen years, said with reference to the duties of the chief: "He had to make out his fire reports and looked after buying stuff and writing orders and stuff like that, and write requisitions and emergency orders and things like that. . . . When we have a fire we would go around over the building and try to find the cause of the fire and if we couldn't find it that night we would go back the next day and several times we would have to make several trips back. He did not have a stenographer. He wrote out his own reports. He had an alarm system in the house same as at the station. He attended fires at all times and was a good hand. He wore the same outfit to the fires as the men wore. At night he would wear boots and rubber pants. . . . He would help just the same as the rest of the boys and give orders what to do. . . . Lots of times me and him would go in and rush the furniture to the middle of the room and take these top holders and cover them up and I couldn't do this by myself. . . . Sometimes we were short of men at meal hours and men would take the hose and run off with them and maybe leave one man at the truck, and the driver can't connect up by himself and me and him has went and connected up with the hydrant. . . . I have seen him take an axe and bust open some doors and an axesaw and saw off locks. . . . Lots of times I have seen him chop holes in floors. He was a fellow that could stand lots of smoke and could go in like that. He wasn't a fellow that would say go do something. He would say, let's go. . . . After the fire was over he would go around and hunt for kerosene rags or rags that would cause spontaneous combustion. . . . He was on duty all the time." Another fireman, testifying for claimant said: "I have seen him take hold of hose and help get him to knock down doors and do things like that. . . . I have seen him take hold of the hose and help the men when they were in a strain." Another fireman, witness for plaintiff,

said: "He was always there and looked the place over to see where he could locate his men at and then lots of times he would help the men. I have seen him saw off locks, tear down doors, chop holes in the floor, and anything that was to be done. I have seen him moving or carrying out furniture. I have seen him carry hose. . . . He would do anything that the men would do."

The hearing commissioner found as a fact "that the chief of the fire department was an employee as contemplated by the terms of the Workmen's Compensation Law, and that his dependents are entitled to recover." . . . Thereupon an award was made and the defendant appealed to the full Commission, which approved the findings of fact and award, and the defendant appealed to the Superior Court.

Certain findings of fact were made by the trial judge. The vital finding was as follows: "The court finds as a fact that the said Harry E. Nissen, although he was elected by the board of aldermen of the city of Winston-Salem as chief of the fire department to serve for a definite term and for a stated amount of salary, did not act in a purely administrative capacity, and when attending a fire customarily discharged the duties of an ordinary fireman."

From the judgment approving the award of the Industrial Commission the defendant appealed to the Supreme Court.

*Manly, Hendren & Womble for claimant.*
*Parrish & Deal for defendant.*

BROGDEN, J. Counsel for defendant state in their brief accurately and succinctly the questions of law involved, to wit:

(1) Was the chief of the fire department of the city of Winston-Salem, who was killed in a motor vehicle wreck while answering a fire call, an employee within the meaning of the Workmen's Compensation Law?

(2) Is the Supreme Court bound by the findings of the Industrial Commission and the Superior Court in this case?

C. S., 8081(i), Michie's Code, 1931, provides: "The term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship . . . ; as relating to municipal corporations and political subdivisions of the State the term 'employee' shall include all officers and employees thereof, except such as are elected by the people or elected by the council, or other governing body of said municipal corporation or political subdivision, who act in purely administrative capacities, and to serve for a definite term of office." The deceased was elected or appointed by the board of aldermen as chief of the fire department for the defendant, to hold office for one year, or until his successor is elected and qualified.

The defendant asserts that the deceased was an executive officer of the city and that the duties prescribed by ordinance were purely administrative. The statute, *supra,* withdrew from the operation of the compensation law all officers of a municipality elected by the council or other governing body, . . . who "act in purely administrative capacities." Obviously the word "purely" in its ordinary sense means exclusively. No precise and invariable definition of the word "administrative" can be given. The meaning given by the appellate courts and textwriters depends upon the particular facts and circumstances under review. Black's Law Dictionary (3d ed.), p. 59, defines or rather describes the word "administrative" as "pertaining to administration. Particularly, having the character of executive or ministerial action. In this sense, administrative functions or acts are distinguished from such as are judicial," etc. The Michigan Court in *People v. Salsbury,* 96 N. W., 936, says: "The term 'administration' is also conventionally applied to the whole class of public functionaries, or those in charge of the management of the executive department. Mechem, in his work on Public Officers (section 655), makes the following statement: 'This class of officers is known by different names. They are sometimes called 'executive officers,' sometimes 'administrative,' sometimes 'ministerial,' and with slight shades of distinction; but for convenience sake, and as may properly be done, they will all be treated here under the general heading of 'ministerial' officers, and there will be included all officers whose duties are wholly or chiefly ministerial." See, also, *State v. Loechner,* 59 L. R. A., 915. McQuillin in his work on Municipal Corporations (2d ed.), Vol. 2, p. 38, quotes *Judge Cooley,* as follows: "The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily in the tenure of his position."

So far as the record discloses the deceased took no oath of office, gave no bond, had no authority to employ or discharge firemen, and was apparently removable by action of the board of aldermen. Moreover, he was subject at all times to the control, supervision and direction of said board. Indeed, he could not go out of town without the "consent of the mayor or the fire and building committee." It would seem that the position of the deceased was in the nature of a foreman of the fire department or head fireman for the city of Winston-Salem.

Assuming, however, that Nissen was an officer, did he perform "purely administrative acts?"

The evidence discloses that the deceased customarily and habitually performed the duties of fireman, or as one witness declared, "he was a good hand. . . . He would help just the same as the rest of the boys."

The "dual-capacity" doctrine has been adopted in determining the rights of the parties in compensation cases: "that is to say, that executive officers of a corporation will not be denied compensation merely because they are executive officers if, as a matter of fact, at the time of the injury they are engaged in performing manual labor or the ordinary duties of a workman. Hence, one of the fundamental tests of the right to compensation is not the title of the injured person, but the nature and quality of the act he is performing at the time of the injury." *Hodges v. Mortgage Co.*, 201 N. C., 701. Of course, all of these principles must be construed and considered in the light of reason and common sense. Obviously the mayor of a city would not become an employee merely because he occasionally picked up a piece of hose or occasionally used a shovel or mattock when in the presence of a street force. Desultory, disconnected, infrequent acts of manual labor performed by an administrative officer and not reasonably required by the exigencies of the situation, would not classify such officer as a workman.

However, in the case at bar a consideration of the limited discretion and power of the chief of the fire department and the fact that he customarily and habitually performed the duties of ordinary firemen, and that the very nature of his employment apparently required such work upon his part, lead the court to the conclusion that the deceased did not "act in purely administrative capacities," and the award is approved.

In answer to the second question of law propounded, it is sufficient to observe that both the Supreme and the Superior courts are bound by the findings of the Industrial Commission where there is any competent evidence to support such findings. Of course, if the facts are admitted and only one inference could be reasonably drawn therefrom, such facts present a pure question of law; but in the case at bar the chief of the fire department acted in a supervisory capacity, and also as a workman. Both the Industrial Commission and the trial judge found, upon competent evidence, that the deceased was an employee within the meaning of the Compensation Act, and such finding so made is conclusive.

Affirmed.