MRS. VIRGINIA L. GASSAWAY, Widow, and BETTY JANE GASSAWAY, Adopted Daughter, Dependents of HARRY C. GASSAWAY, Deceased, v. GASSAWAY & OWEN, INCORPORATED, Employer, and HARTFORD ACCIDENT & INDEMNITY COMPANY, Carrier.

(Filed 7 January, 1942.)

**1. Master and Servant § 39e—**

An executive officer, in his capacity as such, is not an employee within the meaning of the Workmen's Compensation Act, but is an employee within the coverage of the Act while engaged in manual labor or work of an ordinary employee when performed by him as a part of his duties.

**2. Same—**

The fact that an executive officer performs desultory, disconnected and infrequent acts of manual labor is insufficient to constitute him an employee within the coverage of the Compensation Act, nor is the mere fact of injury while performing such labor sufficient, but it must be made to appear that the performance of such labor was a part of his duties.

**3. Evidence § 42b—**

Testimony as to declarations made two days and one day before declarant made a trip on which he was fatally injured is incompetent to show declarant's purpose in making the trip, since the statements, not having been made at the time of and not being immediately connected with the actual departure, are not a part of the *res gestæ.*

**4. Death § 7—**

Declarant was fatally injured in an automobile accident. *Held:* Declarations made by him the night before and two days before undertaking the journey are not admissible as dying declarations. C. S., 160.

**5. Master and Servant § 39e—**

The fact that an executive officer is injured during his working hours raises no inference that at the time of the injury he was acting in the discharge of his duties as an employee rather than as an executive.

**6. Same—**

Ch. 150, Public Laws 1935, amending sec. 14 (b) of the Compensation Act, which provides that proof that the employer obtained insurance and filed claim should be *prima facie* evidence that the employer and employee have elected to be bound by the Act does not have the effect of raising a presumption that an executive officer injured in the course of his duties was at the time engaged in the duties of an employee rather than those of an executive.

**7. Master and Servant § 40e—**

Evidence that an executive officer, during his working hours, was injured in an automobile accident while driving a car furnished him by the corporation, which he used for business and pleasure, without competent evidence that he was then engaged in duties pertaining to his em-

ployment, is insufficient to show that the injury was a natural and probable result of a risk incident to the employment and arose out of and in the course of his work as an employee.

**8. Master and Servant § 39e—**

The evidence tended to show that an executive officer of a company engaged in the contracting business was fatally injured in an automobile accident. Claimant's evidence raised surmises or inferences that at the time of the accident the officer was on his way to another city to negotiate a contract, to give estimates of costs, to fix prices, and to bind the company by contract. *Held:* The inferences are to the effect that the officer was engaged in his duties as an executive and not in the discharge of duties of an ordinary employee or workman.

APPEAL by defendants from *Clement, J.,* at October Term, 1941, of FORSYTH. Reversed.

Claim for compensation under the Workmen's Compensation Act.

The defendant Gassaway & Owen, Inc., is a close corporation. The deceased and Owen were the principal stockholders, a third party owning only a nominal amount. Gassaway was president and Owen was vice-president and secretary. Gassaway, claimant's intestate, "looked at prospective work, making estimates, figuring bids and doing some of the actual construction work supervising some of the actual construction work." The corporation provided an automobile for his use and one for the use of Owen.

On Saturday, 29 June, 1940, the deceased, upon being called by telephone by an employee, went to the office, talked with the employee, and at about 12:30 p.m. left on the company automobile furnished him, telling the employee that he would meet him back there at 5 o'clock. At about 1 p.m., he was involved in an automobile wreck on the Winston-Salem-High Point road about one-half mile beyond the intersection of the High Point and Kernersville road. He sustained injuries which resulted in death.

Claim for compensation was filed and an award was made. Upon appeal to the Superior Court the award was affirmed and the defendants appealed.

*Ratcliff, Hudson & Ferrell for plaintiffs, appellees.*
*Sapp, Sapp & Atkinson for defendants, appellants.*

BARNHILL, J. The Workmen's Compensation Act was designed and intended for the relief of injured workmen and employees earning a "weekly wage" and not for salaried executives. "The title and theory of the Act import the idea of compensation for workmen and their dependents." *Hodges v. Mortgage Co.,* 201 N. C., 701, 161 S. E., 220;

*Roberts v. Coal Co.*, 210 N. C., 17, 185 S. E., 438. Executive officers of a corporation are not, as such, its employees in the ordinary sense of the word and as it is used in this act." *Hodges v. Mortgage Co., supra.* "When the president of a corporation acts only as such, performing the regular executive duties pertaining to his office, he is not an employee within the meaning of the statutory definition." *Higgins v. Shirt Co.,* 149 Atl., 147; *Hodges v. Mortgage Co., supra.*

This is conceded by claimants. They contend, however, that the deceased at times performed the duties of an employee and that at the time of his death he was so engaged. Hence, under the terms of the Act and pertinent decisions of this Court his dependents are entitled to compensation.

We adhere to the dual capacity doctrine under which executive officers of a corporation will not be denied compensation merely because they are executive officers if, as a matter of fact, at the time of the injury they are engaged in performing manual labor or the ordinary duties of a workman. *Hodges v. Mortgage Co., supra; Nissen v. Winston-Salem,* 206 N. C., 888, 175 S. E., 310. It is upon this doctrine the claimants rely.

To come within this doctrine it is not sufficient to show that an executive officer sustained injuries while performing manual or mechanical labor which was no part of his duties. *Hodges v. Mortgage Co., supra.* Nor are desultory, disconnected, infrequent acts of manual labor performed by an executive sufficient to classify him as a workman when so engaged. *Nissen v. Winston-Salem, supra.* The test is, was he at the time of his injury, as a part of his duties, engaged in performing ordinary, detail, mechanical or manual labor or other ordinary duties of a workman? *Nissen v. Winston-Salem, supra; Hodges v. Mortgage Co., supra; Hunter v. Auto Co.*, 204 N. C., 723, 169 S. E., 648.

Thus it is that the record presents two material questions for decision. (1) Is there sufficient competent evidence in the record to show that deceased received injuries resulting in death while engaged in the performance of any duty owing the defendant Gassaway & Owen either as an executive or as an employee, and if so, (2) was he then engaged as an employee rather than as an executive?

Claimants rely on statements made by deceased, prior to his alleged departure for High Point to obtain a contract, to show that at the time of his death he was engaged in his work as an employee of defendant Gassaway & Owen.

On the Friday night prior to the accident deceased stated to one Stewart, an employee of the Highway Commission, that "he had some work practically sewed up in High Point and he would beat it over and get it, and get it done so that he would be in position to bid on my work."

A foster daughter overheard this telephone conversation and testified that the deceased said he would meet him in High Point the next day, or that he would see him. Mrs. Gassaway, who also heard the conversation, testified that it was about highway work and that Gassaway said "you know I am hard up and need that job, and I need it bad and if I can keep this other firm off of the High Point job I think I can get it, I will try and see in High Point tomorrow," no definite date, time. One Melvin testified that on the Thursday before deceased talked with him and stated that he said "he was trying to get a job at High Point . . . and he was going to High Point some time that week though he didn't say when, and see about a job he felt sure he could get."

These statements were not made at the time of and were not immediately connected with the actual departure. They were no part of the *res gestæ,* and were inadmissible. *Plyler v. Charlotte Country Club,* 214 N. C., 453, 199 S. E., 622; *Molloy v. Transit Co.,* 335 Ill., 164, 166 N. E., 630; *Foster v. Shepherd,* 258 Ill., 164, 101 N. E., 411, 45 L. R. A. (N. S.), 167; *Laboratory Company v. Industrial Com.,* 113 A. L. R., 264, Anno. 113 A. L. R., 268. Nor were they admissible as dying declarations under C. S., 160.

To be admissible as a part of the *res gestæ* it must be made to appear that the statement was made at the time of the starting of the journey, as to the purpose or destination of the trip he is then about to make. It must be connected with the act of departure. Anno. 13 A. L. R., 273-275. When not so made they constitute no part of the *res gestæ* and are inadmissible. Anno. 113 A. L. R., 281.

The corporation furnished deceased an automobile which he used for business purposes in contacting prospective customers, figuring contracts and attempting to get work for the corporation. He kept the automobile at his home and also used it for pleasure.

This automobile was furnished deceased as president of the corporation. The accident was during his working hours as an executive. No inference that he was engaged as an employee rather than as an executive is permissible. As his work, as an employee, was only incidental to his employment as an executive the contrary inference is more logical. Furthermore, the cause of death—an automobile collision—is known. The burden was on plaintiff and *Robbins v. Hosiery Mills, ante,* 246, is not in point. That decision applies only when the employee suffers an injury resulting in death while about his master's business and claimant is unable to offer proof explaining the cause of such injury. It must appear further that the injury was a natural and probable result of a risk incident to the employment.

Ch. 150, Public Laws 1935, which amends sec. 14 (b) of the original Act, is quoted in the opinion of the Commission and relied upon by it as

tending to show *prima facie* that the claimant was an employee. It has no bearing on the question presented. That section merely facilitates proof that the employer and its employees are subject to the terms of the Workmen's Compensation Act. Proof that the employer obtained insurance and a claim was filed is, under the provisions of this section, *prima facie* evidence that the employer and the employee have elected to be bound by the Act.

It follows that claimants have failed to offer any competent evidence tending to show that the death of deceased arose out of and in the course of his work as an employee.

Even if we concede, however, that such death occurred at a time when deceased was acting for the corporation, still the award cannot be sustained. The corporation was engaged in highway and general construction work. The deceased was its president, its chief executive officer. The evidence gives rise to certain surmises. Treating these surmises as legitimate inferences, the president was on his way to High Point to negotiate a contract, to give estimates of costs, to fix prices and to bind the company by contract. In so doing he was the *alter ego,* the voice and the brains of the corporation. Manifestly such business does not lie within the field of the duties of an ordinary employee or workman. They pertain exclusively to the functions of an executive.

*Jones v. Trust Co.,* 206 N. C., 214, 173 S. E., 595, is not in point. There Jones was acting under express orders of a superior. Here the deceased was the superior acting on his own initiative as the chief executive officer of the corporation.

The judgment below is
Reversed.