15558

WILLIS *ET AL.* v. AIKEN COUNTY
(26 S. E. (2d), 313)

January,
1943.

*Messrs. Hendersons & Salley,* of Aiken, S. C., for Appellant,

*Messrs. Williams & Busbee,* of Aiken, S. C., Counsel for Respondents,

July 7, 1943.

Mr. Associate Justice Fishburne delivered the unanimous opinion of the Court:

This is an appeal from the judgment of the lower Court affirming an award of the South Carolina Industrial Commission in favor of the claimants, the widow and children of E. L. Willis, deceased, against the County of Aiken, as self-insurer.

The record discloses the following facts:

E. L. Willis was a deputy sheriff for Aiken County, having been appointed and commissioned as such by J. P. Howard, sheriff, as provided by law. He had served in this capacity for about five years prior to his death. On December 12,

1941, Sheriff Howard, accompanied by Deputy Willis, went to a certain point in the eastern portion of Aiken County to destroy a liquor still. They found the still in a somewhat inaccessible place, in a branch, and not being dressed for the occasion, they decided to return to the still that afternoon for the purpose of destroying it. The sheriff did not return, but sent his deputy, Willis, who was accompanied by two county policemen, Olin Redd and Chester Holley. Upon arriving at the scene they found eight sixty-gallon barrels of mash. Mr. Willis turned over two of them and broke them up with an axe. Immediately afterwards he complained of shortness of breath, whereupon Redd and Holley destroyed the other six barrels. When this work of destruction was completed, they knocked a hole in the 25-pound copper still, stuck a hoe handle through it, and Redd and Willis carried the still out to the automobile, about a quarter of a mile away.

Along this route, Willis again complained of being out of breath, and was forced to stop and rest four times. After getting into the automobile, and en route to Aiken, he complained of a burning sensation in the eyes and weak pulse; and as described by the witness, he finally "passed out." The car was stopped and Willis was revived. Upon reaching Aiken he requested to be taken to his home where he was attended by his physician, Dr. H. T. Hall. The doctor placed him in an Aiken hospital, where he remained under medical treatment until December 21, 1941, when he was returned to his home. Dr. Hall called at his home about eight o'clock the same night to see how he was getting along, and while he was there talking with him Willis suddenly died.

Dr. Hall testified that Mr. Willis died of coronary thrombosis, and it was his unqualified opinion that this condition was precipitated by Mr. Willis' exertion at the liquor still. He definitely expressed the opinion that Willis' death must be attributed to this exertion. The doctor stated that he had never treated him prior to December 12th, but that Willis

told him that he had had a pain in his chest the day before raiding the still.

The first question for the determination of this Court is: Was E. L. Willis an officer of the County of Aiken at the time of his death, or an employee, engaged in compensable work within the meaning of the Workmen's Compensation Act.

Upon the facts stated, the Industrial Commission concluded as a matter of fact and of law that the deceased deputy sheriff not only came within the terms of the Act, but that he sustained an accidental injury arising out of and within the scope of his employment, resulting in his death.

In Paragraph (b) of Section 7035-2 of the Compensation Act, Code 1942, an employee is thus defined: "The term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, but excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer, and as relating to those so employed by the State, the term 'employee' shall include all officers and employees of the State, except only such as are elected by the people, or by the General Assembly, or appointed by the Governor, either with or without the confirmation of the Senate; as relating to municipal corporations and political subdivisions of the State, the term 'employee' shall include all officers and employees thereof except such as are elected by the people or elected by the council or other governing body of said municipal corporation or political subdivision, who act in purely administrative capacities, and to serve for a definite term of office. Any reference to an employee who has been injured shall, when the employee is dead, include also his legal representative, dependents, and other persons to whom compensation may be payable."

It will be noted that in the latter portion of the paragraph quoted, the Act provides that "as relating to municipal corporations and political subdivisions of the State, the term 'employee' shall include all officers and employees thereof," and excepts such as may be elected by the people or by the council or other governing body, who act in purely administrative capacities and serve for a definite term of office.

It is the contention of the claimants that Deputy Sheriff Willis was an officer of the county; that his appointment having been made by the sheriff and confirmed by a Circuit Judge, he came within the term "employee," inasmuch as the exception "such as are elected by the people," etc., has no application to a deputy sheriff who is not so elected but who derives his office from the appointment of the sheriff.

The appellant contends in effect that a deputy sheriff is not an officer at all; that a deputy can come into being only by virtue of his appointment by a sheriff, in consequence of which he is the sheriff's *alter ego*. That a sheriff and a deputy sheriff in contemplation of law constitute one entity. In other words, that the position of deputy sheriff in the sight of the law is merged in that of the sheriff, and there can be no dual entity.

We are unable to agree with the appellant's position in its application to the Workmen's Compensation Law of this State.

The appointment, duties, etc., of a deputy sheriff in Aiken County are set out as follows in Section 3552-1, 1942 Code: "The duties heretofore performed by the said county policeman shall hereafter be performed by one deputy, appointed and commissioned by the sheriff of Aiken County, who shall be under his immediate direction and control. In the performance of his duties the said deputy shall pay particular attention to the enforcement of the laws prohibiting the sale and unlawful use of intoxicating liquors. The said deputy shall be appointed for the term of one (1) year and shall receive for his services the sum of one thousand ($1,000.00)

dollars per annum, to be paid in monthly installments by the said county, as other salaries are now paid. The said deputy may be removed by the sheriff, at any time for cause, by giving ten days' notice thereof to the deputy so sought to be removed." (The salaries, including the expenses, of the deputy sheriffs of Aiken County were later raised to $2,-700.00 per year.)

The general statutory law dealing with deputy sheriffs provides, among other things, that the sheriff "shall in all cases be answerable for neglect of duty or misconduct in office of such deputy." Section 3486, 1942 Code.

Section 3488 provides that every such deputy sheriff shall, previous to entering on the duties of his appointment, take the oath prescribed by the Constitution, and when so qualified he may perform any and all of the duties pertaining to the office of his principal. It is provided in Section 3494 that a deputy sheriff before entering upon the discharge of his duties, shall enter into bond, with sufficient sureties to be approved by the sheriff, and shall in addition to the oath of office prescribed by the Constitution, take the following oath, to wit: "I further solemnly swear (or affirm) that during my *term of office* as county deputy * * *" etc. (emphasis added). Other sections dealing with the duties and the authority of deputy sheriffs are 3491-3494, inclusive.

The office of under or deputy sheriff is one of the oldest offices known to the law; it had its origin in the common law.

It may be stated as a general rule, fairly deducible from the many cases discussing the question, that a position is a public office when it is created by law, with duties cast upon the incumbent which involve an exercise of some portion of the sovereign power, and in the performance of which the public is concerned, and which also are continuing in their nature, and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements. Annotations, 93 A. L. R., 333, 140 A. L. R., 1076.

It is generally held that "the fact that the position is a subordinate one, and that its holder may be accountable to a superior does not prevent it from being an office, or the incumbent an officer as distinguished from a mere employee. A subordinate or inferior officer is none the less an officer." 42 Am. Jur., Sec. 13, page 891. To the same effect is 57 C. J., Sec. 4, page 731. "Where the office of duty sheriff is recognized by the statute, and the deputy is endowed with authority to do any act which his principal may do, it has been held that his acts may be certified in his own name, and not in that of the sheriff. Where so clothed with power, a deputy sheriff is a public officer * * *." 24 R. C. L., Sec. 73, page 890.

Many criteria may be considered, although not regarded as controlling, in determining whether one is a public officer—such as the taking of an oath, giving of a bond, and tenure and duration. The law in this State, already quoted, relating to deputy sheriffs includes all of these requirements. They are required to take the oath of office, give an official bond, and after appointment and qualification they may perform any and all of the duites appertaining to the office of sheriff. The right, authority and duty of a deputy sheriff are thus created by statute. He is invested with some portion of the sovereign functions of the government, to be exercised in behalf of the public, and is, consequently, a public officer within any definition given by the Courts or text writers. It can make no difference that the appointment is made by the sheriff. The power of appointment comes from the state, the authority is derived from the law, and the duties are exercised for the benefit of the public.

A sheriff and his deputy are, for certain purposes, regarded as one officer in law. This rule, however, is founded upon the general principle that as respects the public and third persons, a sheriff and not his deputy is responsible for the official defaults of the latter. In construing the general law in connection with the Workmen's Com-

pensation Act, this doctrine cannot be carried to the extent of holding that a deputy sheriff, such as Mr. Willis, was not a public officer. In a majority of jurisdictions the view prevails that a deputy is a public officer. Annotation, Ann. Cas., 1913-C, page 88.

While Mr. Willis was appointed for a definite term of office, subject to be removed for cause by the sheriff, he did not act in a purely administrative capacity.

We have adopted the "dual capacity" doctrine in determining the rights of the parties in compensation cases. *Green v. City of Bennettsville,* 197 S. C., 313, 15 S. E. (2d), 334. This doctrine is well expressed and approved in *Nissen v. City of Winston-Salem,* 206 N. C., 888, 175 S. E., 310, 313, where the Court said: "The 'dual capacity' doctrine has been adopted in determining the rights of the parties in compensation cases; 'that is to say, that executive officers of a corporation will not be denied compensation merely because they are executive officers if, as a matter of fact, at the time of the injury they are engaged in performing manual labor or the ordinary duties of a workman. Hence one of the fundamental tests of the right to compensation is not the title of the injured person, but the nature and quality of the act he is performing at the time of the injury.' *Hodges v. Mortgage Co.,* 201 N. C., 701, 161 S. E., 220, 223. Of course, all of these principles must be construed and considered in the light of reason and common sense. Obviously the mayor of a city would not become an employee merely because he occasionally picked up a piece of hose or occasionally used a shovel or mattock when in the presence of a street force. Desultory, disconnected, infrequent acts of manual labor performed by an administrative officer and not reasonably required by the exigencies of the situation, would not classify such officer as a workman."

It may be inferred from the testimony in this case, as found by the commission, that Deputy Sheriff Willis, when raiding liquor stills, habitually performed the work of an

ordinary workman or laborer in destroying barrels of mash or paraphernalia connected with the illicit distillery of liquor.

The last question presented is, did the deceased, E. L. Willis, come to his death as the result of an accident arising out of and within the scope of his employment, or was his death due to disease and not compensable under the Act?

We stated the following rule in *Goethe v. New York Life Insurance Co.,* 183 S. C., 199, 190 S. E., 451, 458: "The rule clearly deducible from the overwhelming weight of authority is that, when injury or death follows or results from a voluntary act of the insured, and the act is one which is not manifestly dangerous, but which is ordinarily done or performed without serious consequences to the doer, such result is caused by accidental means. This is nowhere better stated than by Sanborn, J., in *Western Commercial Travelers' Association v. Smith,* [8 Cir.] 85 F., 401, 405, 29 C. C. A. 223, 56 U. S. App. 393, 40 L. R. A., 653, where he says: 'An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and * * * cannot be charged with the design of producing, * * * is produced by accidental means.' "

In our opinion, the testimony which we have already reviewed, clearly authorized the Industrial Commission to make the finding that Deputy Sheriff Willis was a public officer of Aiken County, and that he sustained an accidental injury arising out of and within the scope of his employment. It cannot be said under the rule announced in the *Goethe case,* and applying it to the facts in this case, that there was no testimony appearing in the record to sustain the finding of the commission on this point.

Judgment affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGES T. S. SEASE and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.