15704

ERVIN *ET AL.* v. MYRTLE GROVE PLANTATION *ET AL.*

(32 S. E. (2d), 877)

42

*Messrs. Wise & Whaley* and *Mr. J. F. Spears*, all of Columbia, S. C., Counsel for Appellants,

*Mr. Edgar A. Brown,* of Barnwell, S. C., and *Mr. James Julien Bush* of Columbia, S. C., Counsel for Respondents,

January 22, 1945.

Mr. Associate Justice Oxner delivered the unanimous Opinion of the Court:

This is a proceeding under the Workmen's Compensation Act by the widow and children to recover compensation for the death of Laurie N. Ervin, who was employed as superintendent and general manager of Myrtle Grove Plantation, a large hunting preserve and farm in Beaufort County. On December 20, 1943, Mr. Ervin drove a Plymouth automobile which belonged to his employer from the plantation to Beaufort, a distance of approximately 27 miles, and while returning that night had an accident about 8 o'clock at a point about 13 miles from Beaufort, receiving injuries from which he died on December 25th without regaining consciousness.

The Industrial Commission held that his death arose out of and in the course of his employment and made an award to claimants for the maximum death benefits under the Act, which was affirmed by the Circuit Court. The employer and carrier have appealed from the order of the Circuit Court and the only question for determination is whether there is any competent testimony reasonably tending to sustain the conclusion of the Commission that Mr. Ervin sustained his injuries while in the course of his employment. It is well settled that the limit of the inquiry which this Court is permitted to make "is whether there is any competent testimony reasonably tending to support the finding of fact by the Commission and that the sufficiency of the evidence is for the Industrial Commission, but, of course, any finding of fact by the Commission must be founded on evidence, and cannot rest on surmise, conjecture or speculation." *Smith et al. v. Southern Builders,* 202 S. C., 88, 24 S. E. (2d), 109, 111.

Mr. Ervin lived with his family in a house on the plantation and had been superintendent for a period of approximately four years prior to his death. The owners lived in Connecticut and only visited the plantation at intervals during the winter season. Mr. Ervin had general supervision and "came and went" as the circumstances required, without direction from his employer. Among his duties he was required to see that everything on the plantation was kept in repair and good working order. He had no fixed or regular hours of work and, if the occasion demanded, was expected to attend to his duties at any hour of the day or night. He had the use of several automobiles, including the one involved in the fatal accident. When his personal car was not available, he was at liberty to drive any of these cars for his private use.

There were three pumps which supplied water for the plantation. About the middle of December there was a hard freeze, which cracked some parts on two of the water pumps, resulting in their being out of order. This left only one pump in operation. The owners were expecting guests for the Christmas season and for several days prior to his death, Mr. Ervin was busily engaged in trying to get the pumps repaired and was fearful of another freeze coming before the pumps were repaired, which might result in the plantation being without water. After his death the two pumps under repair were found dismantled with the parts lying on the floor. According to respondents' testimony, considerable repair work connected with the plantation was done, and most of the parts for the machinery purchased, at Beaufort.

After lunch on December 20th, Mrs. Ervin and the children left the plantation for a Christmas visit to her relatives at Dillon, S. C. Her husband was working on these pumps when she left. Carrie McPherson, a servant in the Ervin home, testified that about 2:30 p. m., on the day of the fatal accident, Mr. Ervin told her to hurry through with her

work so he could take her home "a little early because he had some special business to attend to in Beaufort." He carried her home about fifteen minutes later. J. C. Moylin, a petroleum distributor at Walterboro from whom gasoline for the plantation was usually purchased, and a close friend of the deceased, testified that on the same afternoon Mr. Ervin called him over long distance, stating that he was out of gasoline and requesting that some be delivered at once, to which he replied that he would be unable to do so until the next morning. Mr. Moylin further testified that when the above conversation was concluded, he invited Mr. Ervin and his family to his home for that evening and was informed by Mr. Ervin that his wife was not at home, whereupon Mr. Moylin asked him to come alone, to which Mr. Ervin replied that he would like to, but "he had two trips to make that afternoon and then go to Beaufort for something for the plantation and that it would be too late for him to come up." Mr. Moylin was unable to fix the exact hour of this conversation. The record does not disclose the exact time that the deceased left the plantation. There is testimony that he purchased gasoline at Beaufort late in the afternoon of this day and no one was in the car with him. After his death there was found in the car a paper box marked "Standard Cup Leathers." When found this box contained some babbit metal. It appears that this box, or one exactly like it, was kept by Mr. Ervin in the tool house as a container for washers or other parts used in connection with the repair of pumps. At the time of the accident the deceased was dressed in brown boots, tan riding pants and tan corduroy jacket.

Appellants objected to the testimony by deceased's servant and Mr. Moylin as to statements made by the deceased of his intention to go to Beaufort and his purpose in doing so as violating the hearsay rule. Respondents contended, and the trial Judge held, that these declarations were admissible as a part of the *res gestae*. We think the determination of

this appeal depends upon the question of the admissibility of this testimony. If these declarations are not admissible, the remaining testimony, while showing an occasion for the deceased to make a trip to Beaufort in connection with the business of the plantation, is hardly sufficient to show that he in fact did so. On the other hand, if these declarations can be properly considered, we think there is sufficient testimony to support the finding of fact by the Industrial Commission that in making this trip to Beaufort, the deceased was acting in furtherance of his employer's business.

Where the purpose of a person since deceased in making a trip or journey is a material issue in a case, the overwhelming weight of authority is to the effect that declarations by such a person as to his purpose or destination, made at or about the time of his departure, are admissible to establish the destination or purpose of such a journey. Jones, Commentaries on Evidence, 2d Ed., Vol. 3, p. 2243, § 1220; Wigmore on Evidence, 2d Ed., Vol. 3, p. 696, Par. 1725; Encyclopedia of Evidence, Vol. 11, p. 422. An exhaustive annotation on the admissibility of such testimony will be found in 113 A. L. R., beginning on page 268. The annotation covers various types of cases, both civil and criminal, but those relating to the admissibility of such testimony in actions under workmen's compensation statutes will be found beginning on page 300. While it is firmly established that such testimony is admissible, jurists and text-writers are not in accord as to the theory of its admissibility. Such declarations by many, and perhaps by most, of the authorities are admitted as characterizing the journey and as part of the *res gestae*; they are spoken of by some as "verbal acts"; and they are characterized by others as original evidence admissible as an exception to the hearsay rule. However, it would serve no useful purpose to enter into an extended discussion of these various theories of admission of such testimony. The rule itself is now of more immediate concern than the theory upon which it is founded.

The foregoing rule has been applied in numerous cases where death benefits were claimed under workmen's compensation statutes and the issue in controversy was whether the employee at the time was engaged in the business or service of his employer. In *Royal Indemnity Co. v. Hogan,* Tex. Civ. App., 4 S. W. (2d), 93, the employee was a mechanic in the repair shop of a garage, and one of his duties was to see that the cars were properly serviced and repaired and to test them for the purpose of locating any defects in their condition. While driving one of the cars belonging to his employer he was killed in an automobile collision. Declarations made by him to fellow employees before leaving the shop that he was going to drive the car for the purpose of testing it were admitted to show that at the time of the collision he was engaged in the furtherance of the business of his employer. In *Prater v. Traders & General Insurance Co.,* Tex. Civ. App., 83 S. W. (2d), 1038, claimant was employed as a pumper in an oil field and it was his duty to operate the pump and keep it in repair. He was injured in an automobile accident about 1 o'clock in the morning. In support of his contention that he sustained his injury while in the course of his employment, the Court permitted evidence of declarations made by him several hours before the journey was to begin and also at the time he was in the act of leaving, to the effect that the pump had broken down and he was making the journey to secure parts for it. In *Edwards et al. v. Ethyl Gasoline Corporation et al.,* 342 Mo., 98, 112 S. W. (2d), 555, the employee, who was a field representative and salesman, was killed in an automobile collision. To establish that at the time of the accident he was engaged in his employer's business or service, the Court held that declarations made by him shortly before leaving that he had to go to a certain place on "the company's business" were admissible. In *Champagne et al. v. Welch Motor Car Co., Inc. et al.,* La. App., 150 So., 35, the employee received injuries in an automobile collision at 11:00 P. M.,

from which he died. The employer and carrier contended that at the time of the accident the employee was on a pleasure trip, while the claimants contended that the trip was in the interest of the employer. Declarations made by the employee before leaving on the journey that he was going to a certain place to sell some stock belonging to a prospective customer in order to bring about a sale of a truck for his employer to such customer was held admissible on the issue of his purpose in making the trip and whether at the time he was acting in the course of his employment. In the following cases, all of which were under the workmen's compensation statutes, similar evidence was held admissible; *Maryland Casualty Co. v. Kent et al.,* Tex. Civ. App., 271 S. W., 929; *Morse v. Port Huron & D. R. Co.,* 251 Mich., 309, 232 N. W., 369; *Texas Employers' Inc. Ass'n v. White et al.,* Tex. Civ. App., 68 S. W. (2d), 511; *Heaton et al. v. Globe Indemnity Co.,* Tex. Civ. App., 71 S. W. (2d), 328; *Liberty Mutual Insurance Co. v. Nelson,* Tex. Civ. App., 174 S. W. (2d), 103.

Although not involving a proceeding under a workmen's compensation act, the case of *Lake Shore & M. S. Railway Co. v. Herrick,* 49 Ohio St., 25, 29 N. E., 1052, is analogous in principle. It was material there to establish that the plaintiff, injured at a railroad station, intended to take passage on one of defendant's trains. A declaration by the plaintiff as he left his house on his way to the station that he was going to another station on the same railroad was held competent to establish his character as a passenger. To the same effect see *Chicago, M. & St. P. Ry. Co. v. Chamberlain,* 9 Cir., 253 F., 429.

While giving full recognition to the general rule heretofore adverted to, the Courts are not in full accord as to the effect of the element of time between such declarations and the act of departure. The view taken by many Courts, and probably the better view, is illustrated by the following statement from *Prater v. Traders & General*

*Insurance Co., supra* [83 S. W. (2d), 1039] : "In order to render such declaration admissible, it is not indispensable that it be so closely connected with the act of taking the journey as to form a part thereof. It is sufficient if the declaration appears to have been made in a natural manner without circumstances of suspicion and purports to evidence the declarant's existing state of mind with reference to the purpose of the proposed journey and there be such proximity between the time of the making of the declaration and the incident involved in the suit as, under the circumstances, will furnish reasonable assurance that there has been no change of purposes or designs in the meantime." Other Courts, admitting such testimony on the *res gestae* theory, hold that the declarations must be immediately connected with the act of departure. *Boyer Chemical Laboratory Co. v. Industrial Commission et al.,* 366 Ill., 635, 10 N. E. (2d), 389, 113 A. L. R., 264; *Gassaway et al. v. Gassaway & Owen, Inc. et al.,* 220 N. C., 694, 18 S. E. (2d), 120. In these two cases statements made by the deceased the day before leaving were excluded. In *Boyer Chemical Laboratory Co. v. Industrial Commission et al., supra* [366 Ill., 635, 10 N. E. (2d), 391], the Court said: "The test of the applicability of that rule is whether the declaration sought to be considered as a part of the *res gestae* is so separated from the act by lapse of time as to render it probable that the party making the declaration was speaking from design rather than instinctive impulse."

We think the testimony in question in this case meets either of the foregoing tests. Deceased could not have anticipated the fatal accident and there is no basis for a suspicion that at the time the declarations were made there was any intention to make evidence to be used at a trial. The circumstances under which they were made preclude the idea of deliberate and self-serving design. They are not too far removed in point of time from the act of departure. The declaration to the servant was made while deceased was

preparing for his departure. The Industrial Commission could have reasonably concluded that the telephone conversation with Mr. Moylin occurred only a short time before he left.

In cases of this kind the fact at issue is the purpose of the journey and this is wholly dependent on the state of mind of the declarant. Declarations made by him are strong circumstances bearing on the state of his mind. Frequently after the declarant's death, there is no other way of proving his purpose or design in going on a journey.

In the light of the foregoing authorities, there was no error in the admission of this testimony. The precise question before us has apparently never been passed upon by this Court. However, the following cases tend to some extent to sustain our conclusion; *Turpin v. Brannon*, 3 McCord, Law 261; *Lazar v. Great Atlantic & Pacific Tea Co. et al.*, 197 S. C., 74, 14 S. E. (2d), 560.

Finally, appellants contend that whatever motive or intention the deceased had, he could have changed his mind and that the trip as actually made was wholly of a personal nature, although it is undisputed that on this afternoon the deceased did in fact go to Beaufort. In support of this contention, appellants offered the testimony of two servicemen stationed at the Beaufort Naval Air Station, which is located on the road from this plantation to Beaufort. One of these men testified that he was "picked up" by deceased on the highway near this station, a distance of about four miles from Beaufort, and was offered a drink of whiskey, although none was in the car; that they went to Beaufort where each purchased a quart of whiskey at a liquor store and from there went to a restaurant located between Beaufort and Parris Island; that at the restaurant each poured a drink of whiskey while waiting for supper, the deceased taking "one sip" from his drink; that while eating supper they were joined by the other serviceman who happened to be in the restaurant; that the new companion con-

sumed the drink which deceased had poured and all three ate supper together; and that after supper they got in the car and the accident happened in returning along the road which was traveled by the deceased in going to Beaufort. This witness testified that the deceased attended to no business whatsoever in Beaufort.

The foregoing testimony is contradicted by the operator of the filling station at Beaufort who testified, as heretofore pointed out, that he sold some gasoline to the deceased late that afternoon and no one was in the car with him. It is further contradicted by abundant testimony that the deceased, who was an elder in the Presbyterian Church, did not indulge in intoxicants. There was evidence that these men were highly intoxicated and were strangers to the deceased. The credibility of these two witnesses the inherent probability of their statements, the extent to which the accuracy of such statements may have been affected by their use of intoxicants, and the conflict between their testimony and the other testimony above referred to, were all considerations peculiarly within the province of the Industrial Commission. *Green v. Greenville County,* 176 S. C., 433, 180 S. E., 471; *Thompson v. Bearden, Sheriff,* 200 S. C., 519, 21 S. E. (2d), 189.

All exceptions are overruled and the judgment below affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.